892 F.2d 82
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Art BROMAN, Appellant,
v.
RIEDEL INTERNATIONAL, INC., Appellee.
 No. 88-2698.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 16, 1989.
Decided Dec. 18, 1989.
 
 1
 Before BRUNETTI and NOONAN, Circuit Judges, and HARRY L. HUPP,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appeal by plaintiff/counter-defendant from summary judgment in favor of defendant/counter-claimant and from denial of post-arbitration motions. AFFIRMED.
 
 BACKGROUND
 
 4
 This diversity action was originally filed by appellant Art Broman (hereinafter Broman) against appellee Riedel International, Inc. (hereinafter Riedel). Broman sought declaratory relief and alleged that Riedel had been unjustly enriched in the performance of a contract between the two parties. Riedel had been hired by the San Francisco Redevelopment Agency (hereinafter SFRA) to construct a boat harbor and park, and it contracted with Broman for demolition services related to the project. Broman was hired in that capacity to replace another subcontractor, Tantra of Illinois (hereinafter T.O.I.), and was to be paid $932,000 for his efforts.
 
 
 5
 In his complaint, Broman asserted that he was unable to commence work at the time the contract was signed, due to the failure of Riedel to get SFRA approval of his substitution for T.O.I. He also claimed that Riedel created various impediments to the completion of the project. Broman asserted that the written contract contained no date of completion, but that an oral schedule was established. In later proceedings, he complained that Riedel modified the terms of the agreement by accelerating performance dates and by filling in a blank in the contract, after he signed it, with language to the effect that the work was to be completed "per contractor's schedule." Broman concluded that because the parties had not agreed to the terms of the contract and because Riedel added new terms to the agreement, no valid contract existed between them.
 
 
 6
 Riedel answered and filed a counterclaim for breach of contract. The Riedel-Broman contract included an arbitration clause, and Riedel filed a motion to compel performance of that term. Broman opposed the motion on the ground that the entire contract (including the arbitration clause) was invalid for the reasons stated above. The district court rejected that line of reasoning, and issued an order compelling arbitration. However, the trial court expressly noted that the arbitration panel was not to consider the issue of the existence of a contract. Specifically, the district court's order stated, "the arbitrator(s) is not to decide whether or not there was a contract between Broman and Riedel. That issue is beyond the power of the arbitrator."
 
 
 7
 Nevertheless, appellant Broman argued to the arbitrators that no contract had been created between Broman and Riedel, and the arbitrators issued a finding that the contract was enforceable. On March 25, 1987, the arbitrators awarded Riedel $1,257,304.00, and found that no breach had been committed by it. They also granted Riedel $275,192.00 in attorney's fees and costs. The award was "in full settlement of all claims submitted to [the] arbitration." On April 22, 1987, Riedel moved for an order confirming the arbitration award. That motion was granted on May 22, 1987, and an order entered on September 8, 1987. At that time, Broman did not move to modify or vacate the arbitrators' decision.
 
 
 8
 By order of November 5, 1987, the trial court authorized Broman to raise at trial the issue of whether or not a valid contract requiring arbitration existed between Riedel and himself. However, on November 27, 1987, Riedel made a motion for summary judgment on that issue, which the trial court granted.
 
 
 9
 On February 11, 1988, Broman substituted himself for counsel of record and filed a series of motions. He submitted a motion for a new trial, an affidavit asserting bias and prejudice on the part of the trial judge, a request to amend his complaint, a motion for equitable relief to vacate the arbitrators' award, and a request to present evidence in opposition to confirmation of judgment. The district court rejected all of these claims.
 
 
 10
 Now, Broman has appealed, in pro se, a number of the decisions below. He asserts that it was improper for the trial court to order arbitration before it considered whether there was a valid contract between the parties, and that the court erred in its order granting summary judgment by finding that a valid contract existed. He complains that the trial judge allowed him only a few words at the summary judgment hearing and then cut him off. Additionally, his brief contains allegations of fraud on the part of the arbitrators. Broman attempts to argue that the contracts with Riedel were "forged, altered and counterfeited." Finally, he asserts that Riedel has obtained a judgment related to this contract against T.O.I., is seeking another against SFRA, and that the sum of the awards it has received constitutes a "double dip" (multiple recoveries for the same loss). Broman challenges the trial court's refusal to enjoin Riedel from pursuing claims against the SFRA.
 
 ANALYSIS
 I. ORDER REQUIRING ARBITRATION
 
 11
 The contract entered into by Broman and Riedel contained the following arbitration clause:
 
 
 12
 In the event any dispute arises under this agreement ... Contractor in its sole discretion may elect to have such dispute submitted to arbitration as herein provided. The option to elect arbitration ... shall be vested exclusively in the Contractor and such option shall exist regardless of whether Contractor is asserting or defending the matter in dispute.
 
 
 13
 It is Broman's contention that the trial court should not have ordered arbitration prior to considering his claims that a valid contract was not in force between the parties.
 
 
 14
 Contracts to arbitrate disputes which involve interstate commerce are governed by Section 2 of the Federal Arbitration Act (the Arbitration Act). See 9 U.S.C. § 2; Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 74 L.Ed.2d 765 (1983). The Arbitration Act states that "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the Arbitration Act evidences a Congressional policy to support arbitration as an efficient method to settle disputes; thus, all doubts regarding the scope of arbitrable issues should be decided in favor of arbitration. See Moses Cone, supra, at 24-25; Southland Corp. v. Keating, 465 U.S. 1, 10-16, 79 L.Ed.2d 1 (1984).
 
 A. Timeliness of Appeal
 
 15
 Riedel asserts that the appeal as to the order to compel arbitration is untimely, and therefore, that the Court lacks jurisdiction to consider it. Since the time that the motion to compel arbitration was heard by the trial court, Congress has changed the appellate jurisdiction over such orders through the Judicial Improvements and Access to Justice Act (hereinafter the Improvements Act), Pub.L. 100-702, § 1019, 102 Stat. 4670 (1988). The Improvements Act effectively overruled a series of Ninth Circuit cases which had held that orders to compel arbitration were final and appealable. See Delta Computer Corp. v. Samsung Semiconductor & Telecommunications Co., --- F.2d ----, No. 87-15094 (9th Cir.1989). However, the Improvements Act became effective well after the trial court compelled arbitration; hence, it is inapplicable to the case at hand.
 
 
 16
 The law of the Circuit prior to passage of the Improvements Act was that orders to compel arbitration were usually final and appealable. See Delta Computer, supra; Francesco's B., Inc. v. Hotel and Restaurant Employees, 659 F.2d 1383, 1388 (9th Cir.1981); Howard Electrical and Mechanical Supply v. Frank Briscoe Supply, 754 F.2d 847, 849 (9th Cir.1985); Bauhinia Corp. v. China National Machinery & Equipment Import & Export Co., 819 F.2d 247, 249 (9th Cir.1987); Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp. 814 F.2d 1324, 1326-27 (9th Cir.1987). However, the case law carved out an exception to that general rule where the trial court reserved jurisdiction over matters not sent to arbitration. See Construction Laborers Pension Trust v. Cen-Vi-Ro Concrete Pipe & Products Co., 776 F.2d 1416, 1420 n. 5 (9th Cir.1985).
 
 
 17
 In the case at hand, the trial court retained jurisdiction over Broman's defense that no valid contract existed. Hence, under Cen-Vi-Ro, the order compelling arbitration was not final, and Broman could not have appealed the order at the time it was made. The appeal is timely.
 
 
 18
 B. Propriety of Order Compelling Arbitration Prior to Resolution of Validity of the Contract.
 
 
 19
 Although Broman's appeal was timely, there is no merit to his claim that the case should not have been submitted to arbitration. The trial court seems to have limited its order requiring arbitration to matters involving the interpretation of the contract and claimed breaches of the contract. The order specifically retained jurisdiction over the contract alteration claims. There is no question that the arbitration clause was broad enough to require arbitration of disputes over the meaning and breaches of the contract. Furthermore, the trial court had the discretion to require arbitration of all arbitrable matters prior to reaching issues that it had reserved. See, e.g., Cen-Vi-Ro, supra. Additionally, a district court may order arbitration even if the validity of the contract containing the arbitration clause is in dispute. See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406, 18 L.Ed.2d 1270 (1967) (discussed infra ). Hence, the initial order compelling arbitration was proper.
 
 II. SUMMARY JUDGMENT
 
 20
 The decision of the trial court to grant summary judgment on the issue of the existence of a contract is subject to review de novo. Fagner v. Heckler, 779 F.2d 541, 543 (9th Cir.1985). A reviewing court must only decide whether there are any genuine issues of material fact remaining and whether the substantive law was correctly applied. Id. at 543.
 
 
 21
 The order compelling arbitration specifically noted that the arbitrators were not to decide whether or not the contract between the parties was valid. Otherwise, it appears that the arbitrators were to resolve all of the parties' disputes. In retaining the questions regarding the existence of the contract, the trial court appears to have held that this issue did not fall under the arbitration clause. That is, it must have determined that Broman's defenses did not "arise" under the agreement. After confirming the arbitration award which purported to settle all disputes between the parties, the trial court granted summary judgment on the question of the existence of a contract. The basis of the trial court's decision on the summary judgment motion is not clear from the record submitted on appeal.
 
 
 22
 Riedel argues that the entire dispute between the parties should have been ordered to arbitration under the holding of Prima Paint, supra.[1] In essence, Riedel asserts that the order compelling arbitration was too narrow. It concludes that summary judgment was proper since the arbitrators had the automatic authority, which they exercised, to reach all of the issues in the case.
 
 
 23
 However, the Court need not consider Riedel's argument that the order compelling arbitration should have submitted the entire case to arbitration, since there is an alternative ground upon which to uphold the summary judgment and confirmation of the arbitration award. As noted above, Broman was not ordered by the trial court to submit his fraud/contract alteration allegations to the arbitrators. However, the record indicates that he independently elected to do so after arbitration commenced.
 
 
 24
 Although a party may not be compelled to arbitrate a dispute not covered by a contractual arbitration clause, it may not submit an issue to be considered by an arbitrator and then challenge his authority to hear the matter. See Fortune, Alsweet & Eldridge, Inc. v. Daniel, 724 F.2d 1355, 1357 (9th Cir.1983). Furthermore, the initial contract to arbitrate may be modified by the decision of the parties to submit their claims to arbitration. See International Brotherhood of Teamsters v. Washington Employers, Inc., 557 F.2d 1345, 1349-50 (9th Cir.1977); United Steelworkers of America v. Northwest Steel Rolling Mills, 324 F.2d 479, 482 (9th Cir.1963); Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, 611 F.2d 580, 584 (5th Cir.1980); Johnson v. United Food and Commercial Workers, 828 F.2d 961, 965 (3rd Cir.1987).
 
 
 25
 Broman argued before the arbitration panel:
 
 
 26
 Clearly the thrust of our position is that there was not a contract at the time that Art Broman received a notice to proceed ... The reason that we feel so strongly that there was no contract is; number one, the fact that a contract document signed by Riedel was never delivered to Broman until after he had been removed from the job; number two, that the document is different in several aspects, one of which is critical, from the document which he signed; number three, the schedule was accelerated and compressed to the extent that, as Professor Crandall testified, the job at the time Art Broman was expected to commence performance was completely different from that which he had bid and that the July 13 schedule was actually obsolete when issued, based upon the expectations that they wanted from Broman.
 
 
 27
 In the appellant's post hearing brief submitted to the arbitration panel, Broman asserted that the following issues were to be decided:
 
 
 28
 1) Was there a written contract between the parties hereto? 2) Was that written contract, or an implied contract, abandoned, repudiated or materially changed as a result of the activities of Riedel International? 3) Did Riedel constructively terminate any contractual relationship between Riedel and Broman? and 4) Was Riedel's assertion that there were no changes a pretext to obtain additional bonding coverage for demolition and thereafter force Broman from the job with the bond as a source of recovery for Riedel?
 
 
 29
 Having voluntarily injected those issues into the arbitration proceeding, even though the trial court apparently found that at least some of them were not covered by the arbitration agreement, Broman may not escape the panel's decision against him by claiming that it lacked jurisdiction. Having submitted the issue, the arbitrators' decision adverse to him is binding upon him. Hence, provided the arbitration award was properly confirmed, the trial court was correct in granting the motion for summary judgment. Since Broman submitted all of his contract defenses to the arbitrators, the panel's decision left no issue to be resolved by the district court.
 
 
 30
 Although the Court does not rest its holding on the merits of Broman's claim that the contract was materially altered, thus making it void, it does note that the facts stated by Broman at oral argument do not support the claim of contract invalidity. Before this Court, Riedel admitted that its agents filled in a blank in the contract. At the time Broman signed the contract, there was an empty space in the paragraph dealing with the time of performance, with no date being specified. Riedel agreed at oral argument that at some time the words "per contractor's schedule" were inserted in the blank. However, the sentences following the blank indicate that the addition of the words did not materially alter the terms of the contract. The document Broman signed stated, "Subcontractor (Broman) agrees that the Contractor (Riedel) has the right to modify Subcontractor's rate and/or time of performance." Thus, the addition of the term did not affect the contract between the parties.
 
 
 31
 III. Confirmation of Arbitrators' Award and Findings of Fact
 
 
 32
 An award or finding of fact made by an arbitrator shall be confirmed even "in the face of 'erroneous findings of fact or misinterpretations of law.' " French v. Merrill Lynch, Pierce, Fenner & Smith, 784 F.2d 902, 906 (9th Cir.1986) (quoting American Postal Workers Union v. United States Postal Service, 682 F.2d 1280, 1285 (9th Cir.1982), cert. denied, 459 U.S. 1200 (1983)). The decision of an arbitrator is to be upheld unless it is "completely irrational ... or it constitutes a manifest disregard of the law." Id. (quoting Swift Industries, Inc. v. Botany Industries, Inc., 466 F.2d 1125, 1131 (3rd Cir.1972) and George Day Construction Co. v. United Brotherhood of Carpenters, 722 F.2d 1471, 1477 (9th Cir.1984)).
 
 
 33
 In addition to failing to file a timely motion to vacate the arbitration award, Broman has made no showing that the arbitrators' decision was irrational or made in disregard of the law. Hence, the confirmation of the award was proper. Once the award was confirmed, Broman having submitted his entire case to the arbitrators, there were no factual questions left in the case.
 
 IV. Post Arbitration Motions
 
 34
 After the trial court confirmed the arbitration and granted Riedel's motion for partial summary judgment, Broman brought a series of petitions which the district court denied. They included the following motions: 1) for new trial; 2) for disqualification of the judge; 3) to vacate the arbitration award; 4) to present further evidence in opposition to confirmation; 5) for leave to file a second amended complaint; and 6) to enjoin Riedel from pursuing a claim against the SFRA. Broman appeals the denial of these motions below.
 
 
 35
 A. Motion for New Trial, to Vacate Award, to Present Evidence, and to Block Riedel from Pursuing a Claim Against the SFRA.
 
 
 36
 Broman presents no basis for holding that the trial judge abused his discretion in denying these motions. Broman argued to the trial court that the arbitrators exceeded their authority in finding that there was a contract. This is the same issue dealt with above.
 
 
 37
 Likewise, the motion to vacate the arbitrators' award was properly denied. Under 9 U.S.C. § 12, a motion to vacate an award must be served within three months of the date of entry. In this case, the award was made on March 25, 1987; thus, the motion brought in February of 1988 was too late. Additionally, it appears that Broman merely repeated the arguments he had previously made regarding the arbitration proceedings--that they denied him his right to a jury trial and that they made an incorrect decision. Given the fact that the trial court had already confirmed the arbitration award on proper grounds, there was no abuse of discretion in denying this motion.
 
 
 38
 Regarding the motion to present evidence, it is unclear what evidence Broman wanted to submit for the trial court to consider. Nevertheless, Broman has made no showing that the district judge abused his discretion, given the fact that the court had already confirmed the arbitration award and granted Riedel partial summary judgment.
 
 
 39
 Finally, the request that the district court prevent Riedel from pursuing its claim against SFRA was properly denied. Broman asserts that Riedel has received a "double dip" by recovering from T.O.I. (the original subcontractor) as well as from Broman, and that it has improperly attempted to seek even more compensation for the same work in a suit against SFRA. First, there is reason to doubt Broman's standing to attack Riedel's right to proceed against a third party, SFRA. However, even assuming standing, the arbitrators' award apparently considered the SFRA action and its possible overlap with the claims made against Broman. The arbitrators held:
 
 
 40
 Any recovery by RIEDEL in connection with the $527,703.00 demolition differing site conditions claim which has been and shall be asserted and pursued by RIEDEL against the owner in connection with the construction project in question shall be remitted and paid over by RIEDEL to BROMAN, less the reasonable costs, expenses and attorney's fees incurred by RIEDEL in pursuing such claim.
 
 
 41
 That being the case, it seems that Broman had no reason to complain about Riedel pursuing other claims it may have against SFRA.
 
 B. Motion to Disqualify
 
 42
 The record does not include a copy of the affidavit submitted by Broman in support of his motion for disqualification. However, in his brief, the appellant claims that the judge turned his back on Broman and did not allow him to fully present his arguments. Even if this were true, it would not support recusal. See Thomassen v. United States, 835 F.2d 727, 732 (9th Cir.1987) (extrajudicial bias must be shown).
 
 
 43
 C. Request for Leave to File Amended Complaint
 
 
 44
 After the trial court had already granted summary judgment as to the existence of the contract, Broman petitioned the court for leave to file an amended complaint which included fraud allegations. The relevant factors in considering such a request are the following: 1) was there undue delay in bringing the motion; 2) is the request brought upon a bad faith motive; 3) would the amendment be futile; and 4) would prejudice result from its being granted? See, e.g., Sorosky v. Burroughs Corp., 826 F.2d 794, 804-05 (9th Cir.1987). Given the procedural background of the case, the request was tardy; indeed, it was made after the trial court had disposed of Broman's case by way of confirmation of the arbitration award and summary judgment. Furthermore, the finding of the arbitration panel that Riedel did not alter the contract and that it in no way breached the agreement would seem to foreclose the possibility that it defrauded Broman. Thus, the amendment would have been futile.
 
 CONCLUSION
 
 45
 The trial court is affirmed on all counts. The district court properly ordered the case to arbitration, reserving to itself issues it deemed not to be covered by the arbitration clause. Broman, however, elected to submit all of his defenses to the arbitration panel, thus waiving any jurisdictional limitations. The district court did not err in granting partial summary judgment to Riedel, since all of the underlying disputes were addressed by the arbitration panel.
 
 
 46
 Additionally, the arbitration award was properly confirmed. Broman did not file a motion to vacate the award, and he has presented no basis for the argument that the arbitrators acted irrationally. Finally, the post-arbitration motions were properly denied since Broman made no tenable argument that the trial court abused its discretion.
 
 
 47
 AFFIRMED.
 
 
 
 *
 of the Central District of California
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In Prima Paint, the Supreme Court considered the effect of the provisions of the Federal Arbitration Act on allegations of fraud in the inducement regarding an entire contract. The Court held that where allegations of fraud are directed at the entire contract, rather than the arbitration clause alone, the issue of fraud itself is arbitrable provided: 1) that the arbitration clause is broad enough to cover fraud; and 2) there is no evidence that the parties intended to withhold that question from arbitration. See Prima Paint, supra