**PACIFIC REINSURANCE MANAGEMENT CORPORATION and Mission Insurance Company, Petitioners-Appellees,**

v.

**OHIO REINSURANCE CORPORATION; Walton Insurance Ltd.; Abeille-Paix Reassurances; Hamburg International Reinsurance Co.; Hassneh Insurance Co. of Israel, Ltd.; and Seguros America, S.A., Respondents-Appellants.**

No. 86–5740.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1987.

Decided April 10, 1987.

Elliot M. Kroll, Los Angeles, Cal., for respondents-appellants.

Linda M. Lasley, Los Angeles, Cal., for petitioners-appellees.

Before PREGERSON and NORRIS, Circuit Judges, and REED, Jr.,* District Judge.

---

* Honorable Edward C. Reed, Jr., Chief United States District Judge, District of Nevada, sitting

EDWARD C. REED, Jr., District Judge:

*FACTS*

Appellee Pacific Reinsurance Management Corporation (Pacific Re) acted as a reinsurance pool manager for the other parties to this action from 1970 through June, 1984. In that capacity, Pacific Re provided underwriting and claims handling facilities to service the reinsurance business it assumed on behalf of the insurers who participated in the pool. Under the management agreement which Pacific Re entered into with the pool members, it had the authority to underwrite and sign reinsurance agreements on behalf of the pool members, collect premiums and settle claims, and bill the pool members for their share of the losses. One standard form of management agreement was used from 1970 to 1979 (the 1970 management agreement), and a revised version of the agreement (the 1979 management agreement) was executed by all of the companies participating in the pool from 1979 to June of 1984.

In addition, appellee Mission Insurance Company (Mission) "fronted" for pool members Walton and Ohio Reinsurance Corporation. Under this arrangement, Mission assumed reinsurance for itself, Walton, and Ohio, and then reinsured that portion of the reinsurance business it assumed on behalf of the other pool members. This fronting arrangement was documented by reinsurance agreements similar to the management agreements used by appellee Pacific Re. The reinsurance agreements also followed a standard form, created in 1970 (the 1970 reinsurance agreements) which was amended in 1979 (the 1979 reinsurance agreements).

All four forms of agreements contemplated arbitration of possible disputes between the parties. The 1970 management and reinsurance agreements did not establish any particular procedure for the selection of neutral umpires. Both the 1979 management and reinsurance agreements, however, incorporated a detailed procedure by designation.

for the selection of arbitrators and for the selection of a neutral third arbitrator to serve as an umpire. Specifically, the 1979 management and reinsurance agreements included a provision which indicated that

> [a]ny dispute ..., upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen.... If the two arbitrators fail to agree in the selection of a third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one and the designation shall be made by drawing lots.

C.R. 23, ex. C.[1]

Because some of the appellants entered into more than one of the said forms of agreement with the appellees, twelve separate agreements thus existed between the parties to this action. Five of the agreements, the 1970 management and reinsurance agreements, contained no contractual procedure for the selection of a neutral umpire, while the other seven 1979 agreements did.

In February of 1985, the pool members filed suit against Pacific Re and Mission in the U.S. District Court for the Southern District of New York, seeking rescission of the twelve agreements, damages, and an accounting. In May of that year, Pacific Re petitioned the U.S. District Court for the Central District of California for an order compelling arbitration of the disputes contained in the pool member's New York action. That court granted Pacific Re's motion to compel arbitration on June 25, 1985, and specifically ordered the pool members to arbitrate their disputes with Pacific Re "according to the terms of their respective management agreements." C.R. 23, ex. C.

In accordance with the order of the court and with their contracts, the parties named their respective arbitrators, who then began their attempt to select a neutral third party to serve as umpire. Both arbitrators

named two candidates for the position. They then attempted to reach agreement over which one of the four candidates should fill the position as the contract required, but they were ultimately unsuccessful. At this point, Mr. Koepke, the appellants' arbitrator, insisted that the lot-drawing procedure found in the seven 1979 agreements be used to select the umpire for all twelve of the contracts. Mr. Gilmartin, the appellees' arbitrator, was opposed to the lot-drawing procedure in general, and refused to follow it even for the seven agreements in which it had been selected as the means for ending arbitral impasse. The parties thus assumed an "all or nothing" approach to this dispute. The disagreement regarding the selection procedure lasted for five months, after which time the appellees requested a status conference with the district court to break the stalemate.

At this conference, on December 2, 1985, the parties presented the court with a joint status report which described their impasse. Judge Hatter then ordered both sides to prepare disclosure statements indicating which individuals were desired as umpire, with the intention that the court itself would appoint the neutral arbitrator. Before the court could follow through with its plan, however, the pool members filed an *ex parte* application to stay that order, and then sought review of the order from this court by means of petitions for writs of mandamus and prohibition. The motion for stay and the petitions for writs were all denied. The pool members then filed a notice of appeal from the December 2 order, which this court dismissed for lack of jurisdiction. On March 2, 1986, the district court entered its order selecting an umpire and two alternates, and the pool members filed the present appeal from that order.

## DISCUSSION

### FINALITY OF ORDER

■ Appellees contend that the district court order appointing the umpire is not reviewable by this court in that it is neither

---

1. Despite its random nature, there is nothing inherently improper with the lot-drawing procedure in general. *See Corey v. New York Stock* *Exchange*, 691 F.2d 1205, 1207 n. 2 (6th Cir. 1982); *Acton Corp. v. Borden, Inc.*, 670 F.2d 377, 378 n. 1 (1st Cir.1982).

a final judgment under 28 U.S.C. § 1291, nor an appealable collateral order under § 1292. The cases and arguments of the appellees are unpersuasive, however, in that this court has long held that orders compelling arbitration are final orders under § 1291. *See, e.g. Howard Elec. & Mech. v. Frank Briscoe Co.,* 754 F.2d 847, 849 (9th Cir.1985); *Francesco's B, Inc. v. Hotel and Restaurant Employees and Bartenders Union,* 659 F.2d 1383, 1388 (9th Cir.1981). In that this order is essentially also an order compelling arbitration, *see ante* at 1327, we will also treat it as final for the purposes of § 1291.

## STANDARD OF REVIEW

The appellant pool members argue that this court should review the district court's order *de novo,* whereas appellees suggest we apply a clearly erroneous standard. From a review of the record, it is clear that the facts of this case are not in dispute. The basis of the district court's orders of December 2 and March 6 was a joint status report prepared by both the appellant and the appellee. In this report, the parties set forth the nature of their disagreement over the selection of the umpire and discussed the method which should have been used to resolve the stalemate. The essential facts regarding the inability to select the umpire were thus stipulated by the parties. Where the facts are not in dispute, this court has held that questions of law regarding arbitration problems will be reviewed *de novo. See Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691, 693 (9th Cir.1986).

In addition, we have regularly held that orders compelling arbitration are reviewable *de novo. See Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447, 1449 (9th Cir.1986); *Howard Elec. & Mech. v. Frank Briscoe Co.,* 754 F.2d 847, 849 (9th Cir. 1985). Although the order in this case was not technically labeled as an order compelling arbitration (the district judge had indeed already compelled arbitration), the order did function to compel the parties to accept a neutral umpire of the court's choice because of the parties' impasse. Such an order is dramatically similar to an order compelling arbitration. As with an order compelling arbitration, without the court's selection of the neutral umpire in this case, the parties would still likely be bickering over the selection process, and the resolution of the dispute would be permanently stalled. The *de novo* standard is therefore also appropriate here.

## APPOINTMENT OF UMPIRE

The question presented here is one of first impression in this and all other circuits. The main thrust of appellants' complaint is that the district judge exceeded his authority when appointing the neutral umpire in spite of the contractual selection method which existed in seven of the agreements with the appellees. The district judge based his ruling on the Federal Arbitration Act, which provides in pertinent part that

> [i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in the filling of a vacancy, then upon application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire as the case may require.

9 U.S.C. § 5. This provision contemplates that the parties must follow the contractual procedure for arbitrator selection if such exists. The statute goes further, however, to state that the court itself may appoint an umpire if there is no such provision, if the specified method is not utilized by one of the parties, or if there is simply a lapse in time in the naming of the umpire for any other reason. *Id.*

In the present case, the contractual selection method seemed doomed from the start. Only seven of the twelve contracts contained the umpire selection procedure, whereas the remaining five were silent as to this matter. Because the appellees' arbi-

trator, Mr. Gilmartin, was opposed to the use of the lot drawing procedure for all of the contracts, and because the appellants' arbitrator, Mr. Koepke, insisted on use of the procedure for all of the contracts, deadlock was quickly reached. After five months of stalemate, the appellees presented the situation to the district court for solution. Under the statute, the district judge was required to follow the agreement of the parties regarding the selection of the umpire. *See Id.* It was clear, however, that this was impossible. For five of the contracts, there simply was no such agreement. For these five contracts, it is indisputable that the district judge had the power to appoint an umpire. *Id.*

▮ Such power also existed for the seven contracts in which a selection method was provided. It must be remembered that the statute also allows the court to appoint umpires when the parties fail to utilize the given contractual procedure, or if there is a lapse of time, for whatever reason, in the naming of an umpire. In this case, the appellees had failed to utilize the selection procedure, because their arbitrator objected to the randomness of the lot drawing method. In addition, there was a significant lapse in the naming of the umpire because of the deadlock which existed between the parties.[2] Thus, when the district judge stepped in and named the umpire, he was entirely within the powers granted to him by the statute. *See Astra Footwear Industry v. Harwyn International, Inc.,* 442 F.Supp. 907, 910 (S.D.N.Y.1978) (§ 5 authorized court to appoint umpire when authority named in arbitration clause no longer conducted arbitrations); *see also Cook v. Superior Court of Los Angeles,* 240 Cal.App.2d 880, 50 Cal.Rptr. 81 (1966) (under California Code section virtually identical to § 5, courts are justified in rem-

edying arbitral impasse between two arbitrators who disagree on the appointment of an umpire upon application by either party).

Appellants maintain that the district judge should first have ordered the parties to comply with the contractual selection method before taking the selection onto his own shoulders.[3] In support of this contention, they cite *ATSA of California, Inc. v. Continental Insurance Co.,* 702 F.2d 172 (9th Cir.1983), *amended,* 754 F.2d 1394 (9th Cir.1985). In that case, Cairo had pled the arbitration clause in its contract with ATSA as an affirmative defense to an impleader action instituted by ATSA's insurer. The district court then stayed all proceedings and commanded the parties to name neutral and disinterested arbitrators and to submit to arbitration in accordance with the rule of the Internation Chamber of Commerce. *Id.* ATSA objected to this order on the grounds that in compelling the use of neutral and disinterested arbitrators the district court had failed to honor the contractual provision regarding the selection of arbitrators.

This court agreed with ATSA. Initially, we held that "[u]nder 9 U.S.C. § 5, the parties' method of appointing arbitrators must be followed." *Id.,* at 176. The district judge erred in this case by requiring the appointment of neutral and disinterested arbitrators without first allowing the parties recourse to their own contractual method of selection. That method contemplated that the parties would only resort to the ICC rules regarding the appointment of an umpire in the event that their partisan arbitrators could not agree. *Id.* We ordered the parties to comply with their agreement, provided that if they could not agree on an umpire, they would then be

---

**2.** Although the conduct of the appellees seems somewhat untoward in that they refused to follow a contractual provision for which they had bargained, several factors must be taken into account. Initially, the statute does not permit only the blameless party to approach the court. The statute clearly indicates that the court shall make its appointment upon application of *either* party, without discrimination. Further, it must be noted that the appellants were hardly guiltless in this case. In demanding that the con-

tract method be used to select the umpire for all twelve of the contracts, the appellants' arbitrator demanded that to which he was not entitled and contributed significantly to the logjam.

**3.** In so doing, however, appellants ignore the fact that the judge's initial order did command the parties to comply with the contract's selection procedure.

required to proceed under ICC rules and appoint three neutral arbitrators. *Id.* We later amended this order. Because the contract provided that only one neutral arbitrator would be supplied by the ICC if the two partisan arbitrators could not agree on an umpire, we restructured our first order to implement correctly the parties' agreement. *See ATSA of California v. Continental Insurance Co.,* 754 F.2d 1394, 1396 (9th Cir.1985).

The *ATSA* cases, contend the appellants, stand for the proposition that courts must give effect to and follow the agreements of the parties regarding the selection of arbitrators. Appellants, however, overlook the fact that the district judge in ATSA had ordered the selection of arbitrators without first allowing the parties a chance to utilize their agreement. In the present case, however, the parties have already had their chance to comply with their agreement. The first order of the district court ordered that arbitration take place in accordance with the parties' agreement. The parties then attempted to appoint their umpire as required by the contracts, but were unable to do so. After five months of impasse, the appellees finally approached the district court for an order appointing the umpire. It is thus clear that the district judge had given the parties ample time and opportunity to comply with their own agreement and had complied with the first part of § 5. If the judge had stepped in at the beginning of the arbitration and had appointed neutral arbitrators, the ATSA cases would control here. Because he took it upon himself to appoint the umpire only after the parties had tried and failed to make such appointment, it is clear that the judge acted within the scope of the authority granted him by the Arbitration Act.

At first blush, the court's holding today may seem to contradict the general principle that parties may make their agreement as they see fit, within the bounds of legality. As we have stated above, there is nothing inherently wrong with the lot-drawing procedure used in seven of these agreements. *See, supra,* pg. 1326 n. 1. In the enactment of § 5, however, Congress has evinced its intention of facilitating arbitration when impasse in selection of an umpire has been reached. This section still respects the agreements of the parties, by requiring compliance with those agreements when possible. In cases such as this one, however, the intent of Congress was to spur the arbitral process forward, rather than to let it stagnate into endless bickering over the selection process. Further, Congress intended the judge's appointment powers to be exercised notwithstanding the fault of parties in availing themselves of the agreed selection process. By enacting § 5, therefore, Congress decided that impasse in the arbitral process was to be avoided where possible, and that the agreements of the parties would have to take a subordinate position where impasse in umpire selection arises.

The order of the district appointing the umpire in this arbitration is *AFFIRMED.*