178 Wis.2d 755 (1993)
505 N.W.2d 147
IN the MATTER OF the ARBITRATION BETWEEN:
EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Petitioner-Respondent,
v.
Robin A.G. JACKSON, an Underwriter at Lloyd's, London, on his own behalf and as Representative Underwriter, Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies, Respondents-Appellants.[]
No. 93-0354.
Court of Appeals of Wisconsin.
Submitted on briefs June 21, 1993.
Decided August 10, 1993.
*756 On behalf of the respondents-appellants, the cause was submitted on the briefs of William D. Mollway of DeWitt, Porter, Huggett, Schumacher & Morgan, S.C. of Madison; and R.R. McMahan, Robert A. Knuti, Jane H. Veldman and Sharon Rice of Lord, Bissell & Brook of Chicago.
On behalf of the petitioner-respondent, the cause was submitted on the brief of Dale I. Larson and Timothy W. Regan of Zelle & Larson of Minneapolis; and Douglas J. Klingberg and Steven M. Anderson of Ruder, Ware & Michler, S.C. of Wausau.
Before Cane, P.J., LaRocque and Myse, JJ.
CANE, P.J.
Certain Underwriters at Lloyd's of London[1] appeal the order of the circuit court confirming *757 the naming of two arbitrators to the dispute between Lloyd's and Employers Insurance of Wausau. The circuit court held under 9 U.S.C. §§ 4 and 5, the United States Arbitration Act (USAA), and secs. 788.03 and 788.04, Stats., that it had jurisdiction to name the arbitrators. Lloyd's appeals on several grounds. Lloyd's argues that (1) the circuit court lacked statutory authority to rule on Wausau's claims, (2) the circuit court's finding that Lloyd's Chicago counsel (Lord, Bissell & Brook) had become its agent for receipt of demands for arbitration under the arbitration agreement is not supported by any evidence, (3) the circuit court's finding that "time is of the essence" in the parties' arbitration agreement is erroneous as a matter of fact and as a matter of law, and (4) the circuit court's finding that a potential arbitrator named by Lloyd's was not an "executive officer" was based on the wrong factors.
We conclude that the circuit court had statutory authority under both USAA § 5 and sec. 788.04, Stats., to rule on Wausau's claims. We further conclude that our review of the circuit court's naming of an arbitrator, arbitrators or an umpire under the Federal Arbitration Act (FAA) § 5 or sec. 788.04 is limited to whether the circuit court erroneously exercised its discretion. Here, we conclude that it did not. Lloyd's claims regarding Lord, Bissell & Brook's agency for *758 receipt of process, and any other claims regarding the propriety of the arbitrators, should be ruled on by the two arbitrators named by the circuit court and the umpire whom they select.
Lloyd's and Wausau are parties to a series of contracts called "excess retrocessional insurance treaties." Under these treaties, Lloyd's reinsured reinsurance contracts issued by Wausau's professional reinsurance department to other insurance companies. Treaties in force for the period July 1, 1966 to June 30, 1973 are at issue in this case.
The treaties contain an arbitration clause providing:
If any dispute or difference of opinion shall arise with reference to the interpretation of this Agreement or the rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, who shall be executive officers of insurance companies domiciled in the U.S.A., one to be chosen by the Company, one to be chosen by the retrocessionaire, and the third by the two arbitrators so chosen within 30 days of their appointment. If either party refuses or neglects to appoint an arbitrator within 30 days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators, who shall choose the third.
In August of 1988, Lloyd's notified Wausau that they were denying proofs of loss submitted by Wausau regarding asbestos-related products liability payments Wausau had made to companies it had reinsured. Wausau claimed these losses were covered by its reinsurance agreements with Lloyd's. Lord, Bissell & Brook, in its capacity as claims counsel for Lloyd's, conveyed this notice of denial of claims to Wausau and *759 engaged in claims reviews and other claims handling activities with Wausau. In a letter sent to Lord, Bissell & Brook dated May 27, 1991, but postmarked June 3, 1991, Wausau requested arbitration of the asbestosrelated claims. At this time, Wausau also named William Fox, president and chief operating officer of Providence Washington Insurance Company, as its party arbitrator. Lord, Bissell & Brook acknowledged receipt of the May 27 letter on June 6, 1991 and, on June 13, 1991, they advised counsel for Wausau that:
This firm does not have any authority to accept notice on behalf of the London Blanket Excess of Loss Reinsurers. We have reviewed the retrocessional treaties and note that the designated intermediary, Pritchard & Baird, is no longer in business. In view of this problem, we have forwarded your letter to the London Broker Leslie & Godwin with a request that they circulate your notice of arbitration to the various Lloyd's syndicates and London companies ....
On June 20, 1991, counsel for Wausau insisted that Lord, Bissell & Brook had express and apparent authority to accept the demand for arbitration and advised that Wausau would treat the notification to Lord, Bissell & Brook (June 6) as marking the time from which the thirty-day time period for Lloyd's naming of an arbitrator would run. Thus, Lloyd's had until July 6, 1991 to name its party arbitrator.
On July 22, 1991, Lord, Bissell & Brook advised Wausau's counsel that Lloyd's selected Robert Hall of Reliance National as its party arbitrator. Wausau opposed the selection of Hall, claiming it was not timely and Hall was not an executive with an insurance company. On July 25, 1991, Wausau designated Bradford *760 Mitchell, chairman of the board and CEO for Harleysville Insurance Companies and Harleysville Mutual Insurance Company of Pennsylvania, as the second arbitrator.
Wausau then initiated this action in Marathon County Circuit Court. Lloyd's removed the case to the United States District Court for the Western District of Wisconsin, citing 28 U.S.C. § 1441(b). The district court granted Wausau's motion to remand the case to Marathon County and granted attorney's fees and costs to Wausau. Lloyd's again removed the case to federal court, this time citing 9 U.S.C. § 205. Again, the federal court granted Wausau's motion to remand the case and awarded it attorney fees and costs. Lloyd's then petitioned the United States Court of Appeals for the Seventh Circuit for a writ of mandamus. The seventh circuit upheld the remand of the case to Marathon County. In re Amoco Petroleum Additives Co., 964 F.2d 706 (7th Cir. 1992).
Upon remand, the Marathon County Circuit Court held a hearing, issued a memorandum opinion, held another hearing and entered findings of fact and conclusions of law, in which it ruled that it had the power pursuant to §§ 4 and 5 of the FAA and secs. 788.03 and 788.04, Stats., to compel arbitration to proceed before Fox and Mitchell, because:
(1) Lloyd's failure to designate a "qualified arbitrator" under the arbitration agreement constituted a "failure, neglect or refusal to arbitrate" within the meaning of FAA § 4 and sec.788.03;
(2) Lloyd's failure to name a qualified arbitrator within thirty days of the request for arbitration constituted a failure to avail themselves of the method for selecting an arbitrator set forth in the *761 agreement within the meaning of FAA § 5 and sec. 788.04; and
(3) There had been a lapse, within the meaning of FAA § 5 and sec. 788.04 in that the parties have reached an impasse regarding the designation of an arbitrator for Lloyd's.
Lloyd's appealed the order and we granted a discretionary appeal.

I. THE CIRCUIT COURT HAD STATUTORY AUTHORITY

TO RULE ON WAUSAU'S CLAIMS
Under the common-law, parties could revoke an arbitration agreement at anytime prior to an award. See Zhaodong Jiang, Federal Arbitration Law & State Court Proceedings, 23 LOYOLA (CAL.) L. REV. 473, 474 (1990). To change this rule, legislatures began to enact statutes that made arbitration agreements binding on the parties. Id. In 1925, Congress passed the United States Arbitration Act. The USAA provides that arbitration agreements are as valid, enforceable and irrevocable as any other contract. Today, the overwhelming majority of states, including Wisconsin, have enacted arbitration statutes that follow the pattern of the federal arbitration statutes and adopt a policy in favor of the use of arbitration as a means of dispute resolution. The Wisconsin courts do not look with disfavor upon arbitration but, rather, encourage it as an alternative to litigation. Diversified Management Servs., Inc. v. Slotten, 119 Wis. 2d 441, 449, 351 N.W.2d 176, 180 (Ct. App. 1984).
[1]
Lloyd's contends that the Marathon County Circuit Court did not have authority to decide this arbitration matter. The court's authority to decide any *762 matter dealing with arbitration is governed by statute. Interpretation of statutes is a question of law that we review independently of the circuit court. Tahtinen v. MSI Ins. Co., 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985). The applicable federal and state statutes are substantively identical. Section 788.03, Stats., is patterned after USAA § 4, and sec. 788.04 is patterned after USAA § 5. Lloyd's cites four cases, Conticommodity Servs., Inc. v. Philipp & Lion, 613 F.2d 1222, 1226 (2d Cir. 1980); World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362, 364-65 (2d Cir. 1965); Trafalgar Shipping Co. v. International Milling Co., 401 F.2d 568, 571 (2d Cir. 1968); and Florasynth, Inc. v. Pickholz, 750 F.2d 171, 174 (2d Cir. 1984), for the proposition that an action under USAA § 4 raises only two questions: the making of the arbitration agreement and whether the failure, neglect or refusal of one party to arbitrate is in dispute. Because we conclude that sec. 788.04 (and USAA § 5) alone gives the circuit court authority to name the arbitrators here, we do not interpret sec. 788.03 (and USAA § 4).
Section 788.04(1) Stats., and USAA § 5 deal specifically with the naming of arbitrators and an umpire. Section 788.04(1) provides:
If, in the agreement, provision is made for a method of naming or appointing an arbitrator or arbitrators or an umpire that method shall be followed. If no method is provided in the agreement, or if a method is provided and any party thereto fails to make use of the method, or if for any other reason there is a lapse in the naming of an arbitrator or arbitrators or an umpire, or in filling a vacancy, then upon the application of either party to the controversy, the court specified in s. 788.02 or the circuit court for the county in which the arbitration *763 is to be held shall designate and appoint an arbitrator, arbitrators or umpire, as the case or sub. (2) may require, who shall act under the agreement with the same force and effect as if specifically named in the agreement; and, except as provided in sub. (2) or unless otherwise provided in the agreement, the arbitration shall be by a single arbitrator. (Emphasis added.)
[2]
In ascertaining the intent of the legislature, our first resort is to the plain language of the statute itself; if it clearly and unambiguously sets forth the legislative and congressional intent, it is our duty merely to apply that intent to the facts and circumstances of the question presented. In re J.A.L., 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991). Here, the intent of the United States Congress and the Wisconsin legislature is clear. The plain language of the statute says that if for any reason there is a lapse in the naming of an arbitrator, arbitrators, or an umpire, then the court shall appoint them as the case requires.
Lloyd's argues that under the USAA, courts are not to review questions of arbitrator qualifications, bias or partiality prior to arbitration. It contends that disagreements concerning a party's compliance with such contractual provisions are in the first instance for the parties themselves or the arbitrators to resolve, and that courts may entertain such questions only in the context of the proceedings to vacate or confirm an award.
Lloyd's submits case law that it claims shows determination of Hall's qualifications, and other issues surrounding his appointment, are questions for the arbitrators. Florasynth, 750 F.2d at 174 (the USAA does not provide for judicial scrutiny of an arbitrator's *764 qualifications to serve, other than in a proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service); In re Dover S.S. Co., 143 F.Supp. 738, 740-41, 742 (S.D. N.Y. 1956) (to allow one party to challenge the qualifications of an arbitrator at the outset of the proceedings would tend to defeat the very purpose of such arbitration agreement); Exber, Inc. v. Sletten Constr. Co., 558 P.2d 517, 522 (Nev. 1976) (questions of compliance with contractual limitations of time within which the demand for arbitration may be made, or provisions governing on whom, or in what manner, service of a demand for arbitration shall be made, are procedural matters for the arbitrators to decide); County of Rockland v. Primiano Constr. Co., 409 N.E.2d 951, 954 (N.Y. Ct. App. 1980) (requirements relating to conduct of the arbitration proceeding, such as whether a demand for arbitration was timely, fall within the jurisdiction of the arbitrators); Globe Transport & Trading Ltd. v. Guthrie Latex, Inc., 722 F.Supp. 40, 41 (S.D. N.Y. 1989) (arbitrators are responsible for disqualifying themselves if they believe they may be improperly partial to one party, and only review of that decision is on a motion to vacate an arbitration award); County of Rensselaer v. Rensselaer County Unit, CSEA, 396 N.Y.S.2d 514 (App. Div. 1977) (questions of timeliness and compliance with step-by-step grievance procedures prior to final binding arbitration are questions of procedural arbitrability and are for the arbitrator, not the courts); and Marc Rich & Co., A.G. v. Transmarine Seaways Corp., 443 F.Supp. 386, 387-88 (S.D. N.Y. 1978) (objective of arbitration law can best be achieved by requiring an arbitrator to declare any possible disqualification, and then to leave it to his or her sound judgment to determine whether to withdraw).
*765 However, these cases and Lloyd's argument are inapposite. In none of these cases was the court asked to rule under 9 U.S.C. § 5, sec. 788.04, Stats., or a statute analogous to these. The policy underlying the case law is that courts should stay out of agreed-on arbitrable disputes whenever possible. We agree. However, here the stalemate between the parties requires court action. The case law cited by Lloyd's does not refute the plain language of sec. 788.04 and 9 U.S.C. § 5. Those sections give the courts jurisdiction and authority to name arbitrators and an umpire in the limited instances where, as here, a stalemate between the arbiters prevents such naming.
The naming of an arbitrator or an umpire by courts under § 5 of the USAA has been upheld in several published opinions. CAE Ind., Ltd. v. Aerospace Holdings Co., 741 F.Supp. 388, 392 (S.D. N.Y. 1989) (court appoints arbitrator); Schulze & Burch Biscuit Co. v. Tree Top, Inc., 642 F.Supp. 1155, 1157 (N.D. Ill. 1986), aff'd, 831 F.2d 709 (7th Cir. 1987) (court appoints arbitrator named in agreement); Neptune Maritime, Ltd. v. H & J Isbrandtsen, Ltd., 559 F.Supp. 531, 532 (S.D. N.Y. 1983) (court appoints arbitrator); Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp., 814 F.2d 1324, 1329 (9th Cir. 1987) (lower court's naming of umpire upheld).
Here, Wausau named William Fox as its arbitrator in June of 1991. Both parties allege that they correctly named the second arbitrator in July of 1991. The trial court found that the parties had reached an impasse as to who correctly named the second arbitrator and consequently the selection of an umpire. We agree. Both Wausau and Lloyd's refuse to proceed to arbitration without their named second arbitrator. This impasse, which has now lasted over two years, gave the circuit *766 court, pursuant to sec. 788.04, Stats., and § 5 of the USAA, authority to name the second arbitrator. The circuit court named Bradford Mitchell. Under the agreement, Mitchell and Fox then select an umpire.

II. TRIAL COURT DID NOT ERR IN EXERCISING DISCRETION

WHEN IT NAMED MITCHELL
Lloyd's attacks the circuit court's selection of Mitchell from several angles. They claim the court erred by determining that "time was of the essence," that Lord, Bissell & Brook could accept service for Lloyd's and that Hall was not an "executive officer." They however misinterpret the scope of our review of the circuit court's action. Our agreement or disagreement with any of their claims made above is only marginally relevant. The circuit court was acting under sec. 788.04, Stats., and USAA § 5 and, thus, our review of the circuit court's selection of Mitchell is by the discretionary standard. See Schulze & Burch, 831 F.2d at 716; Pacific Reinsurance, 814 F.2d at 1329. A circuit court in an exercise of its discretion may reasonably reach a conclusion that another judge or another court may not reach, but it must be a decision which a reasonable judge or court could arrive at by the consideration of the relevant law, the facts and a process of logical reasoning. Hartung v. Hartung, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20-21 (1981). We conclude the circuit court here properly exercised its discretion.
In selecting Mitchell, the circuit court recognized that sec. 788.04, Stats., and USAA § 5 state that "[i]f, in the agreement, provision is made for a method of naming or appointing an arbitrator or arbitrators or an umpire that method shall be followed." Because of the dispute as to who the second named arbitrator should *767 be and therefore the lapse in selecting the umpire, the circuit court simply required the parties to follow their agreement's method for naming the arbitrators who then will select the umpire. In its limited intervention, the circuit court concluded that Wausau had properly followed the clearly established method for appointing the second arbitrator and therefore confirmed the appointment by naming Mitchell.
Lloyd's argues however that it did not lose its right to name the second arbitrator because the agreement does not state that time is of the essence. Therefore, Lloyd's contends that the arbitration should proceed with its named arbitrator. Case law in other jurisdictions appears divided on this timing question when the agreement for selection of the arbitrators does not specifically include time of the essence language. Although the Wisconsin courts have not addressed this specific issue, we recognize that most jurisdictions addressing this question conclude generally that time is not of the essence.
However, Wausau and Lloyd's are sophisticated parties who are well versed in the language and ramifications of contractual arbitration provisions. Here they agreed in clear terms that if Lloyd's failed to appoint the second arbitrator within thirty days, Wausau may appoint the second arbitrator, which it did. The very fact that the agreement allows one party to appoint the second arbitrator when the other party fails to do so within thirty days indicates that the parties considered punctuality important, prompt action was necessary to commence the arbitration and time was of the essence. Thus, the language of the arbitration clause itself makes the timing of appointing the arbitrators consequential regardless of the absence of a "time is of the essence" clause. Additionally, it should not be the function *768 of the courts to rewrite the arbitration clause. Rather, its function should be to enforce the agreement between the parties where the selection method for selection of arbitrators is clear and unambiguous. That is exactly what the trial court did, and we agree.
If there is ever a situation for the court's early limited intervention to get the arbitration process started, this is it. The parties were deadlocked on who should be the second arbitrator and, without the court's intervention, the stalemate would have continued indefinitely. The circuit court concluded that Lloyd's designation of Hall was outside of the thirty-day requirement in the agreed selection method. Although the circuit court should not review an arbitrator's qualifications at this stage of the arbitration process, it also concluded that Hall was not an executive of a United States insurance company, another requirement of the agreed selection method. However, this second conclusion is not fatal and need not require a reversal. As we previously discussed, its first conclusion is a sufficient basis to confirm Wausau's selection of the second arbitrator. Confirmation of Mitchell's selection is certainly one a reasonable court could arrive at by the consideration of the relevant law, the facts and a process of logical reasoning. See Hartung, 102 Wis. 2d at 66, 306 N.W.2d at 20-21. Its exercise of discretion was therefore reasonable and not erroneous.
[3]
Thus, we affirm the circuit court's confirming Fox and Mitchell as the two arbitrators. Fox and Mitchell will name an umpire, and that panel of three will arbitrate the disagreement between Lloyd's and Wausau. We note that the arbitrators, not the courts, have jurisdiction to decide whether Lord, Bissel & Brook could accept notice of the arbitration from Wausau, a procedural *769 matter. See Exber, 558 P.2d at 522. The circuit court's function under § 788.04, Stats., is only to jump start the arbitration process when it has broken down. It did no more than that.
By the Court.Order affirmed.
MYSE, J. (dissenting).
I respectfully dissent from the majority opinion. I believe the majority has erred in two respects. First, it has approved court intervention in a dispute that should have been resolved by the arbitration panel. Second, it has approved the removal of an appointed arbitrator based on the parties' intent in adopting certain contract language without the benefit of an evidentiary hearing.
The scope of the arbitrator's power rests solely on the parties' agreement. Lundgren v. Freeman, 307 F.2d 104, 110 (9th Cir. 1962); City of Milwaukee v. Milwaukee Police Ass'n, 97 Wis. 2d 15, 25-26, 292 N.W.2d 841, 846-47 (1980). If the agreement, contains a clause giving the arbitrator power to resolve disputes concerning the interpretation of the agreement, the meaning of the arbitration agreement should be determined by the arbitrator and not the courts. Local 205 v. General Elec. Co., 233 F.2d 85, 101 (1st Cir. 1956), aff'd 353 U.S. 547 (1957). The purpose of arbitration is to provide a forum for resolving disputes quickly and inexpensively, outside of the judicial system in accordance with the parties' agreement. Diversified Management Servs. v. Slotten, 119 Wis. 2d 441, 449, 351 N.W.2d 176, 180-81 (Ct. App. 1984). The role played by the courts in arbitration cases is limited and circumscribed by the nature of the agreement between the parties. The courts generally only review the arbitrator's decision to determine whether "there is a *770 perverse misconstruction or if there is positive misconduct plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n, 78 Wis. 2d 94, 117-18, 253 N.W.2d 536, 547 (1977). Here, the arbitration agreement provides that "any dispute or difference of opinion with respect to the interpretation of this agreement or the rights with respect to any transaction involved" should be resolved by the arbitration panel, not the court. (Emphasis added.) Because the parties unambiguously granted the arbitration panel the power to resolve these disputes, the courts are not authorized to interfere.
The majority allows the court to intervene in a dispute as to the meaning and effect of the arbitration agreement in spite of the agreement's language reserving these issues for the arbitration panel. One side contends that the arbitration agreement permits the appointment of Hall as its arbitrator because time is not of the essence and because he "functioned as an executive officer, even though not so titled." The other side contends that Hall was disqualified because his appointment violated two requirements of the arbitration agreement: he was appointed after the thirty-day time period had lapsed and he is not an executive officer of an insurance company domiciled in the United States. Additionally, one side contends that the arbitration demand was served on the wrong person while the other side contends that it served the defacto agent.[1] These disputes concerning the meaning of the arbitration agreement and Hall's qualifications to *771 serve as an arbitrator are for the arbitration panel to resolve under the provisions of the agreement.
New York's highest court held in County of Rockland v. Primiano Constr. Co., 409 N.E.2d 951, 953-54 (N.Y. Ct. App. 1980), that questions concerning the conduct of the arbitration itself, for example, the time within which the demand for arbitration must be made, upon whom and in what manner the demand must be served, whether such procedural requirements have been complied with and the consequences of noncompliance, are questions for the arbitrator. Id. at 954. The court explained:
Whether the particular requirement falls within the jurisdiction of the courts or of the arbitrators depends upon its substance and the function it is properly perceived as playingwhether it is in essence a prerequisite to entry into the arbitration process or a procedural prescription for the management of that process.
Id.; see also Exber, Inc. v. Sletten Constr. Co., 558 P.2d 517, 523 (Nev. 1976). The question whether "time is of the essence" in nominating an arbitrator after the receipt of a demand for arbitration clearly falls within the jurisdiction of the arbitrators.
The majority asserts that its conclusion that the trial court properly exercised its discretion by confirming Fox and Mitchell as the arbitrators is based on an application of the agreement's terms to the facts, as the courts are required to do under sec. 788.04, Stats. This result is directly contrary to the decision in Texas Eastern Transmission Corp. v. Barnard, 285 F.2d 536 (6th Cir. 1960). In that case, the court determined that the language the majority relies on does not make time of the essence. The language providing for appointment of *772 a second arbitrator by the party demanding the arbitration in the event the other party does not appoint an arbitrator within thirty days after receipt of the demand does not itself provide that time is of the essence. By determining that Lloyd's forfeited its right to appoint an arbitrator because it failed to do so within thirty days resolves the parties' dispute based not on the agreement's language, but on what the majority believes the parties intended.
This court cannot find, as a matter of law, that time was of the essence for two reasons. First, the agreement did not specify that time was of the essence. Several courts have held that time is not of the essence in arbitration agreements in the absence of a specific provision. In Barnard the court was faced with a similar factual situation as we are faced with here. The contract stated that if either party demands arbitration, the other party has thirty days to appoint an arbitrator on its behalf. Failure to appoint an arbitrator within the thirty-day time period gave the demanding party's arbitrator the right to make an exparte determination. The court concluded that nothing in the agreement indicated that the parties intended that time should be of the essence regarding the period of time in which the arbitrator should be chosen. Id. at 539. The court further noted that relief under 9 U.S.C. § 4 of the United States Arbitration Act (USAA) grants relief in the form of equitable specific performance of the arbitration contract, and that equity does not consider time to be of the essence unless the contract specifically provides. Id. (Citation omitted.) See also New England Reinsurance Corp. v. Tennessee Ins. Co., 780 F.Supp. 73, 77-78 (D. Mass. 1991); Compania Portorafti Commerciale v. Kaiser Int'l Corp., 616 *773 F.Supp. 236, 238 (S.D. N.Y. 1985) (and cases cited therein).
Even if the absence of a provision providing that time is of the essence creates a contractual ambiguity that the trial court has jurisdiction to consider, the trial court must be reversed. The trial court held no evidentiary hearing and made no factual findings regarding the parties' intent. The meaning of an unambiguous contract is a question of law. Schlosser v. AllisChalmers Corp., 86 Wis. 2d 226, 244, 271 N.W.2d 879, 887 (1978). But, if ambiguous the parties' intent is an issue of fact. Patti v. Western Machine Co., 72 Wis. 2d 348, 353, 241 N.W.2d 158, 161 (1976). The agreement requires that the second arbitrator be appointed within thirty days and provides a mechanism for appointing a second arbitrator when the thirty-day time period has expired without such appointment. Arguably, these provisions may be some evidence of the parties' intent that time be of the essence. However, without an evidentiary hearing, this court cannot sustain the trial court's conclusion that the parties intended time to be of the essence in the contract.
The trial court also based its judgment on its determination that Hall is not qualified to act as an arbitrator because he is not titled as an executive officer of an insurance company domiciled in the United States. The majority did not address this issue, electing to uphold the trial court's judgment on other grounds. However, the parties should not be allowed to challenge the qualifications other party's designated arbitrator in court before a final arbitration award because allowing such challenges "would tend to defeat the very purpose" of arbitration, which is to "expedite the disposition of commercial disputes without the restrictive conditions characteristic of judicial proceedings." *774 In re Dover S.S. Co., 143 F.Supp. 738, 740 (S.D. N.Y. 1956). Likewise, the second circuit in Florasynth, Inc. v. Pickholz, 750 F.2d 171, 174 (2d Cir. 1984), noted that "[t]he Arbitration Act does not provide for judicial scrutiny of an arbitrator's qualifications to serve, other than in a proceeding to confirm or vacate an award... ."[2] The challenge to Hall's qualification to serve as an arbitrator centers on the dispute over what the parties intended by "executive officer." As I noted previously, the determination of the meaning of this contractual term is expressly within the jurisdiction of the arbitration panel, according to the contract. Furthermore, because the circuit court held no evidentiary hearing it could not properly make determinations as to the meaning of this provision.
Finally, I have serious doubts that an impasse actually exists and therefore, whether sec. 788.04, Stats., and USAA § 5 are applicable. Even if an impasse exists, however, it does not empower the courts to resolve the parties' disputes. Section 788.04 and § 5 only empower the courts to designate arbitrators according to the arbitration agreement's terms. Here, by designating Fox and Mitchell as arbitrators, the trial court and the majority are resolving the parties' disputes concerning Hall's qualifications. Neither sec. 788.04 nor USAA § 5 empowers the courts to resolve the parties' disputes in the face of an arbitration agreement that expressly grants that power to the arbitration panel.
*775 I believe that the proper methodology is for Hall, the arbitrator initially appointed by Lloyd's, to meet with Fox, Wausau's arbitrator, to select a third arbitrator. The three-person panel may determine whether the parties intended that time be of the essence in appointing a second arbitrator after receipt of an arbitration demand. The panel may further determine whether Lloyd's named its arbitrator within a reasonable time if it concludes that time was not of the essence. The panel may entertain challenges to the arbitrators' qualifications based on the requirements that the arbitrators be executive officers of insurance companies. Finally, if necessary to the complete resolution of the disputes, the panel may determine who may properly receive arbitration demands on Lloyd's behalf. The resolution of these questions by the arbitration panel is consistent with the parties' agreement and the general philosophy of arbitration.
The majority's decision has improperly interposed the judicial system in the midst of an arbitration proceeding to address issues that are properly reserved to resolution by the arbitrators. The mischief is compounded by sustaining the trial court's conclusions concerning the meaning of the arbitration agreement's terms, arrived at without an evidentiary hearing. This result cannot and should not be sustained on appeal.
NOTES
[] Petition to review filed.
[1] The appellants are Underwriters at Lloyd's of London and a number of insurance companies doing business in the London insurance market. The Lloyd's Underwriters engage in the underwriting of insurance and reinsurance risks through syndicates, approximately 50 of which are involved here. The insurance companies, of which there are 25, are variously domiciled in the United States, England, France, Switzerland, Portugal, Italy, Brazil, Scotland, Turkey, Japan and Germany. Appellant Robin A.G. Jackson is a member of one of the underwriting syndicates who was authorized following the filing of this suit to act as representative for all of the appellants. The appellants will be referred to as Lloyd's.
[1] The majority concedes that the agency issue is properly one for the arbitration panel. Majority opinion at 768-69.
[2] Although the Florasynth court was confronted with what amounted to a request for an order forcing unwilling arbitrators, who had previously disqualified themselves, to serve, this view of the USAA is accurate and especially applicable to a challenge of a nominated arbitrator's qualifications to serve.