**OLD REPUBLIC INSURANCE COMPANY, Plaintiff,**

v.

**MEADOWS INDEMNITY COMPANY LIMITED, Defendant.**

No. 94 C 4257.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 17, 1994.

Michael R. Hassan, Albert Edwin Fowerbaugh, Jr., Lord, Bissell & Brook, Chicago, IL, for plaintiff.

Jill B. Berkeley, Lisa Ann Dunsky, Schiff, Hardin & Waite, Chicago, IL, Sheldon B. Pressman, Anderson & Co., New York City, for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Old Republic Insurance Company brings this action seeking disqualification of an allegedly partial arbitrator. Presently before the court is defendant Meadows Indemnity Company's motion to dismiss for lack of subject matter jurisdiction pursuant Fed. R.Civ.P. 12(b)(1). For the reasons set forth below, Meadow's motion to dismiss is granted.

### I. Background

Defendant Meadows Indemnity Company and Plaintiff Old Republic Insurance Company are insurance companies which participated in a reinsurance pool agreement from 1979 to 1984. Under the agreement, Meadows issued reinsurance contracts to Old Republic, among others. All of these contracts provided that disputes arising out of the contracts would be resolved by tripartite arbitration, consisting of one arbitrator appointed by Meadows, one arbitrator appointed by Old Republic, and one umpire selected by the two party-selected arbitrators. The arbitration clause also specified that the arbitrators would be disinterested active or retired officers of insurance or reinsurance companies, and that any arbitration would take place in Chicago.

A dispute between Meadows and Old Republic subsequently arose regarding the reinsurance contracts. Meadows filed an action in the United States District Court for the Eastern District of New York naming, among others, Old Republic as a defendant. On March 15, 1990, Old Republic joined in a motion to stay the action pending arbitration pursuant to 9 U.S.C. § 3. The District Court granted the motion, staying the action and directing Meadows and several defendants, including Old Republic, to submit to

arbitration according to the arbitration clauses of the reinsurance contracts. Meadows initially nominated Joseph Murphy to be an arbitrator, but subsequently replaced Murphy with James P. White. Old Republic objected to the selection of White, claiming that White was not a "disinterested" arbitrator. Specifically, Old Republic noted that White and Old Republic were opponents in two lawsuits in 1984. Meadows, however, refused to withdraw White as an arbitrator. Old Republic then brought this suit, seeking a judicial determination that White is not a "disinterested" arbitrator, and accordingly disqualify him.

## II. Discussion

Meadows filed the present motion to dismiss under Fed.R.Civ.P. 12(b)(1), asserting that this court lacks subject matter jurisdiction over the controversy. We initially observe that Meadows' motion is more properly grounded in Rule 12(b)(6) than Rule 12(b)(1). In *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court stated:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet *it does not create any independent federal question jurisdiction....* [T]here must be diversity of citizenship or some other independent basis for federal jurisdiction....

*Id.* at 26 n. 32, 103 S.Ct. at 942 n. 32 (emphasis added). As it is undisputed that diversity of citizenship exists and the amount in controversy exceeds $50,000, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Accordingly, Meadows' motion to dismiss this action, seeking pre-arbitration review of the impartiality of an arbitrator, is more appropriately considered under Rule 12(b)(6), failure to state a claim upon which relief can be granted.

For our purposes, however, the above distinction is largely irrelevant. As a general rule, our involvement in any dispute arising under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "is severely limited, since, if it were otherwise, the ostensible purpose for resort to arbitration, which is the avoidance of litigation, would be frustrated." *Jardine Matheson & Co. v. Saita Shipping, Ltd.*, 712 F.Supp. 423, 426 (S.D.N.Y.1989) (internal quotations and citations omitted). Indeed, the Act limits a court's involvement to the following situations: compelling arbitration (§ 4), appointing an arbitrator where the parties' agreement does not provide for a method, or where a party "fails to avail himself of such a method, or if for any other reason there shall be a lapse in the naming of an arbitrator ..." (§ 5), confirming an arbitration award (§ 9), and vacating an arbitration award (§ 10). Notwithstanding these narrow parameters, Old Republic argues that this court should oversee the *pre*-arbitration process to ensure the impartiality of the arbitration. Old Republic's argument, in a nutshell, is that because of White's "long, acrimonious and litigious history" with Old Republic, White may be biased against Old Republic in the present arbitration.

In *Marc Rich & Co. v. Transmarine Seaways Corp.*, 443 F.Supp. 386 (S.D.N.Y.1978), a case similar to this, a contractual dispute was submitted to arbitration. The defendant appointed an arbitrator who had previously been plaintiff's adversary in an unrelated dispute. Plaintiff objected to the appointment and demanded that the arbitrator be disqualified, arguing that the separate dispute created at least the appearance of bias toward the defendant. The defendant refused to substitute another arbitrator, and, prior to any arbitration hearing, the plaintiff brought suit to compel the replacement of the defendant's arbitrator.

The court initially noted that a prime objective of any arbitration is "to permit a just and expeditious result with a minimum of judicial interference." *Id.* at 387. The court continued:

> [T]his objective can best be achieved by requiring an arbitrator ... to declare any possible disqualification, and then to leave it to his or her sound judgment to determine whether to withdraw. The arbitrator must of course be aware that such a decision would be subject to judicial review after that such a decision would be subject

to judicial review after the award had been made. Any other rule might spawn endless applications and infinite delay. For example, should we deny this motion and ultimately find [the arbitrator] disqualified, there could be no assurance that Rich would be satisfied with his successor and would not bring yet another proceeding to disqualify him or her.

*Id.* at 387–88 (citation omitted). Accordingly, the court dismissed the action.

The present case is virtually indistinguishable. The parties (and the arbitrators) are certainly aware that the arbitration award is subject to judicial review following the arbitration. *See* 9 U.S.C. §§ 9 & 10. Indeed, Section 10 specifically provides authority for vacating an arbitration award "[w]here there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(b). As a result, it is clear that Old Republic has a remedy in the event it feels it has been judged unfairly. That remedy, however, is simply not available at this time. *See Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 414 n. 4 (2 Cir.1980) ("[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award.") (citations omitted).

In opposing the motion, Old Republic relies upon several clearly distinguishable cases. In *Metropolitan Property and Casualty Ins. Co. v. J.C. Penney Casualty Ins. Co.,* 780 F.Supp. 885 (D.Conn.1991), the court disqualified an arbitrator who had spent a significant amount of time discussing issues and evidence with one of the parties prior to his selection as an arbitrator. In so doing, however, the court expressly distinguished *Marc Rich* and a similar case:

Finally, the holdings in *Marc Rich* and *Corporate Printing* [*Co. v. N.Y. Typographical Union No. 6,* 601 F.Supp. 323] (D.C.N.Y.1984) that a district court lacks jurisdiction to pass on the qualifications of an arbitrator are not conclusive in the context of this action. Those cases involved disputes over "qualifications" and "institutional bias" of arbitrators that created "at least the appearance of bias." Met does not attack the qualifications of the [arbitrator] nor any potential conflict of interest created by his past institutional relationships with Penney. Nor does Met allege the "appearance of bias" here. Rather, Met alleges overt arbitrator misconduct and impropriety during the arbitrator selection process, misconduct that neither the *Marc Rich* nor *Corporate Printing* courts contemplate in their holdings.

*Id.* at 895 (citations omitted). In the present case, there is no allegation of misconduct or impropriety; rather, Old Republic merely suggests the potential for bias because of White's prior litigation. However, this is precisely the type of situation addressed in *Marc Rich* and distinguished in *Metropolitan Property.* Accordingly, Old Republic's reliance upon the latter case, and concomitant dismissal of the former, is clearly misplaced.

The same is true of Old Republic's citation to *Third Nat'l Bank v. Wedge Group Inc.,* 749 F.Supp. 851 (M.D.Tenn.1990). In that case, the arbitrator was identified in the arbitration provision of the contract. The named arbitrator, however, had a fiduciary relationship with one of the parties. The court concluded that the existence of the fiduciary duty would compromise the arbitrator's impartiality, and thus disqualified the arbitrator and appointed a substitute arbitrator. As in *Metropolitan Property,* the bias in *Third Nat'l Bank* was more real than potential. That is, the fiduciary relationship between the arbitrator and the defendant essentially required the arbitrator to be partial to the defendant. No such fiduciary duties exist here; Old Republic's fears of bias are based solely upon long-completed lawsuits, rather than by some legal obligation owed by White to Meadows. Furthermore, the ruling in *Third Nat'l Bank* did not present the danger of successive challenges to party named arbitrators identified in *Marc Rich,* because the court concluded that it had the authority, after disqualifying the named arbitrator, to appoint an arbitrator itself.[1] In the present

---

**1.** The court ultimately directed the parties to submit the name of a mutually-acceptable arbitrator within thirty days.

case, however, White's replacement would presumably be selected by Meadows, subject again to challenge by Old Republic. We are simply unwilling to begin such a (potentially interminable) cycle.

Finally, *Employers Insurance of Wausau v. Jackson*, 178 Wis.2d 755, 505 N.W.2d 147 (App.1993), dealt not with the disqualification of an allegedly partial arbitrator, but with the court's authority to name an arbitrator when one party failed to timely name an arbitrator as required by the parties' arbitration agreement. The trial court concluded that such authority is expressly provided for in Section 5 of the Federal Arbitration Act, and the appellate court affirmed. It is thus apparent that *Employers Insurance* is simply inapposite to the present case.[2] Likewise, Magistrate Judge Weisberg's ruling in *International Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 88 C 9838 (N.D.Ill. Sept. 9, 1992), is of no value to Old Republic. Not only did the court expressly base its decision to disqualify an arbitrator prior to arbitration on Illinois law, but it also suggested that federal law would dictate the opposite result. *See id.*, slip op. at 1. In sum, there is simply no authority for taking the step Old Republic would have us take, for even if the Federal Arbitration Act gave us the authority to review the impartiality of an arbitrator prior to the arbitration, this is clearly not a case in which such review is appropriate. Accordingly, Meadows is entitled to dismissal of this action.[3]

### III. Conclusion

For the reasons set forth above, Old Republic's motion to dismiss is granted. It is so ordered.

---

2. Indeed, the *Employers Insurance* court expressly noted that the cases relating to prearbitration scrutiny of an arbitrator's alleged bias were not applicable to the issue it was considering. *See id.* 505 N.W.2d at 151–52. We further note that Old Republic has not asked that we appoint an arbitrator or an umpire in this dispute; it would merely have us disqualify White.

3. Given our favorable resolution of Meadows' merit-based argument, we need not reach its assertion that we should dismiss this action based upon "federal comity considerations."