## THIRD NATIONAL BANK IN NASHVILLE

v.

## WEDGE GROUP INCORPORATED.

### No. 3-87-0859.

United States District Court,
M.D. Tennessee,
Nashville Division.

### Oct. 19, 1990.

---

Thomas P. Kanaday, Jr., Garry K. Grooms, Farris, Warfield & Kanaday, Nashville, Tenn., for plaintiff.

Stephen A. Riley, Bass, Berry & Sims, Nashville, Tenn., William White, Firm of Susman Godfrey, Houston, Tex., for defendant.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Presently before the Court is a motion by the defendant, WEDGE Group Incorporated ("WEDGE"), to stay proceedings in the above-styled action pending arbitration pursuant to 9 U.S.C. § 3. The Court GRANTS the motion for a stay of the proceedings, subject to the appointment of a neutral arbitrator.

### I.

The motion at bar arises out of an action by Third National Bank in Nashville ("Third National") to recover $2,569,983 allegedly owed by WEDGE to the Rodgers Companies ("Rodgers"), a former WEDGE subsidiary. Third National alleges it is entitled to this sum as a result of a Tax Sharing Agreement executed by WEDGE and Rodgers in October, 1980 and a Tax Receivable Agreement entered into by WEDGE, Third National and Rodgers in June, 1986.

Under the Tax Sharing Agreement, WEDGE and its subsidiaries filed a consolidated federal income tax return as an "affiliated group." The agreement required Rodgers to prepare a "hypothetical" federal income tax return for submission to WEDGE. If this "hypothetical" return produced tax liability that was more than Rodgers' actual taxes paid under the consolidated return, then Rodgers was liable to WEDGE for the difference. Conversely, if Rodgers' liability was less than Rodgers' actual tax payments, then WEDGE was liable to Rodgers for the difference. WEDGE was also obligated to pay Rodgers for the tax benefit accruing to the consolidated group as a result of any Rodgers net operating losses used to offset group income in the consolidated return.

In 1986, WEDGE sought to deny liability for amounts owed Rodgers under the Tax Sharing Agreement. However, later that year representatives of WEDGE, Rodgers and Third National entered the Tax Receivable Agreement. Under this agreement Rodgers assigned to Third National its accounts receivable, including the tax payment allegedly owed by WEDGE to Rodgers, as security for various loans by Third National to Rodgers. Third National also agreed temporarily to forbear seeking collection from WEDGE of the amounts owed by WEDGE to Rodgers under the Tax Sharing Agreement.

After Rodgers allegedly defaulted on its loans to Third National, Third National filed this action against WEDGE. Third National claims that Rodgers owes approximately $6.2 million under their loan agreement and that under the Tax Sharing Agreement WEDGE owes Rodgers approximately $2.6 million. By virtue of the Tax Receivable Agreement and an assignment of interest clause in the Tax Sharing Agreement, Third National argues that it is entitled to the $2.6 million allegedly owed to Rodgers by WEDGE.

Thus far, this action has been consumed with a motion filed by WEDGE in December, 1987 to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. The Magistrate recommended denial of the motion. Upon review of objections to the Magistrate's report, this Court granted WEDGE's motion to dismiss. The Court of Appeals for the Sixth Circuit reversed. *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087 (6th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990).

WEDGE now disputes the validity and accuracy of the Rodgers' hypothetical tax computation that Third National is now seeking to enforce. WEDGE argues that since Third National's claim is made pursuant to the Tax Sharing Agreement, Paragraphs 10 and 17 of the Tax Sharing

Agreement should govern the resolution of Third National's claim. WEDGE alleges that Paragraph 10 constitutes an agreement between Rodgers and WEDGE to arbitrate disputes arising from Rodgers' filing of its hypothetical federal income tax return with WEDGE.[1] Paragraph 17 binds the successors and assignees of Rodgers and WEDGE to the Tax Sharing Agreement. Defendant's Motion to Stay Proceedings Pending Arbitration, Exhibit 1 at 14, Docket Entry No. 29. Defendant has therefore moved the Court for a stay of the proceedings pending arbitration of the hypothetical tax return at issue.

The plaintiff argues that the issues involved in the present action do not fall within the scope of Paragraph 10 of the Tax Sharing Agreement. Specifically, Third National opposes WEDGE's present motion on the grounds that the plain language of the Tax Sharing Agreement, the intent of the parties, and fundamental fairness preclude the arbitration of this action.

## II.

■ A written agreement to arbitrate a dispute is "valid, irrevocable, and enforceable" except on grounds that would exist at law or in equity for the revocation of a contract. 9 U.S.C. § 2. This declaration evinces a liberal federal policy favoring arbitration. *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987); *see e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Thus, upon the motion of a party, a district court must stay an action pending arbitration if the issue at

bar is referable to arbitration under a written arbitration agreement. 9 U.S.C. § 3.

"The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. at 3353. This analysis must be undertaken with great respect for the broad federal policy favoring arbitration. *Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. at 3353; *Moses H. Cone Memorial Hospital*, 460 at 24, 103 S.Ct. at 941; *McGinnis v. E.F. Hutton and Co., Inc.*, 812 F.2d 1011, 1013 (6th Cir. 1987); *Aspero v. Shearson Am. Express, Inc.*, 768 F.2d 106, 108 (6th Cir.), *cert. denied*, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985). Therefore, while the general principles of contract interpretation govern whether arbitration is appropriate, any questions or doubts should be resolved in favor of arbitration. *Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. at 3354; *McGinnis*, 812 F.2d at 1013; *Aspero*, 768 F.2d at 108. So too must the parties' intentions concerning arbitration be "generously construed" in favor of arbitration. *Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. at 3354.

## III.

■ The language in Paragraph 10 of the Tax Sharing Agreement could not be clearer. Paragraph 10 dictates that disputes over the computation of Rodgers' hypothetical federal tax return be submitted to WEDGE's certified public accountant for resolution. Since WEDGE concedes the validity of Rodgers' assignment of claims against WEDGE to Third National, the remaining question is whether WEDGE is liable to Third National under a hypothetical tax return submitted by Rodgers. *See*, Defendant's Motion to Stay

---

1. Paragraph 10 of the Tax Sharing Agreement states in full:

   10. *Disagreements.* In the event that WEDGE shall disagree with the computations prepared by [Rodgers] pursuant to this Agreement or [Rodgers] shall disagree with the computations prepared by WEDGE pursuant to this Agreement, and WEDGE and [Rodgers] are unable to settle their disagreement, the

   differing computations shall be referred to the certified public accounting firm retained by WEDGE at the time of such referral to prepare the consolidated federal income tax return by the Consolidated Group, whose decision shall be final.

   Defendant's Motion to Stay Proceedings Pending Arbitration, Exhibit 1 at 11–12, Docket Entry No. 29.

Proceedings Pending Arbitration, 2–3, Paragraph 8, Docket Entry No. 29. The metier of a certified public accountant is the computation of the tax liability of its clients. That is precisely what the plain language of Paragraph 10 requires.

The parties' intentions concerning Paragraph 10 also support the arbitration of the current claim. Again, the parties designated professionals qualified to examine questions of federal tax liability. That is what is at issue here.

That the defendant has not until now moved for arbitration does not indicate that WEDGE never intended Paragraph 10 to cover claims such as the one at bar. Nor does the delay demonstrate that WEDGE waived its right to arbitration.

There is a strong federal presumption against the waiver of arbitration rights. *See Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. at 941. A party waives its right to arbitrate when his or her actions are "completely inconsistent with any reliance on" the arbitration agreement. *Germany v. River Terminal Ry. Co.,* 477 F.2d 546, 547 (6th Cir.1973). The extended litigation of WEDGE's Rule 12(b)(2) motion is not completely inconsistent with WEDGE's current reliance on the arbitration agreement. *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1150 (5th Cir.1985) (holding that long fought dispute about whether jurisdiction existed over party did not constitute waiver of right to arbitration).

Third National contends that because the Tax Sharing Agreement failed to comply with the Texas State procedural requirements for arbitration, the parties never intended Paragraph 10 to function as an arbitration clause. The Tax Sharing Agreement provides that it is to be governed by Texas law. The plaintiff argues that the Tax Sharing Agreement does not include a notice provision required by Tex.Rev.Civ. Stat.Ann. Art. 224–1 (Vernon 1979).

There is a clear chain of authority establishing the supremacy of the Federal Arbitration Act over state arbitration law that would override decisions by parties to arbitrate. *See e.g., Perry,* 107 S.Ct. at 2525 (holding that Arbitration Act requires arbitration unless arbitration agreement is not part of contract evidencing interstate commerce or is revocable upon such grounds as exist at law or equity for revocation of any contract); *Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282, 285 (9th Cir. 1988) (holding Arbitration Act preempts contrary state law or policies); *New England Energy Inc. v. Keystone Shipping Co.,* 855 F.2d 1, 4 n. 2 (1st Cir.1988) (noting that Arbitration Act governs validity, enforceability and interpretation of all arbitration contracts involving interstate commerce even if parties include a choice of law provision in their contract selecting a particular state's law); *Stokes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 523 F.2d 433, 437 (6th Cir.1975) (affirming district court's stay of proceedings under Arbitration Act, notwithstanding that different result would have been reached in state court). Paragraph 10 would not be invalidated if the Tax Sharing Agreement did not comply with the Tex.Rev.Civ.Stat.Ann. Art. 224–1. Thus, failure by either of the parties to abide by Art. 224–1 in and of itself does not indicate that the parties did not intend Paragraph 10 to require arbitration.[2]

The plaintiff also asserts that since Ernst & Young, the certified public accountant designated in Paragraph 10, is WEDGE's own accountant, the firm would be unable to render an unbiased arbitration award. In particular, Third National contends that the proprietary and fiduciary relationship between WEDGE and Ernst & Young would arguably taint an award in this dispute.

An arbitration award can be vacated when "evident partiality" exists on the part of the arbitrator. 9 U.S.C. § 10. Recently, the Sixth Circuit held that evident partiality " 'will be found where a reasonable person

---

**2.** Tex.Rev.Civ.Stat.Ann. Art. 224–1 was repealed. Act effective Aug. 31, 1987, ch. 817, § 1, Tex. 70th Leg. (Vernon 1990).

would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989) (quoting *Morelite Const. Corp. v. New York City Dist. Council Carpenters Benefit Fund*, 748 F.2d 79 (2d Cir.1984)), *cert. denied*, —— U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 533 (1990). Given the business connection between Ernst & Young and WEDGE and the resulting fiduciary duties Ernst & Young owes to WEDGE as the company's agent, it is reasonable to conclude that Ernst & Young would be partial to WEDGE in the arbitration of this dispute.

Where the potential bias of a named arbitrator makes arbitration proceedings a prelude to later judicial proceedings challenging the arbitration award, a court can appoint a neutral substitute arbitrator. 9 U.S.C. § 5; *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1067 & n. 2 (2d Cir.1972); *Masthead Mac Drilling Corp. v. Fleck*, 549 F.Supp. 854, 856 (S.D. N.Y.1982). This is in keeping with the liberal federal policy favoring the arbitration of disputes. *See e.g., Perry*, 107 S.Ct. at 2525; *Southland Corp.*, 465 U.S. at 10, 104 S.Ct. at 858; *Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. at 3353; *Moses H. Cone Memorial Hospital*, 460 U.S. at 24, 103 S.Ct. at 941. The Court is prepared to appoint a neutral substitute arbitrator in this matter in light of the business and fiduciary relationship between WEDGE and Ernst & Young.

IV.

The plain language of the Tax Sharing Agreement clearly indicates that Paragraph 10 constitutes an agreement to arbitrate disputes such as the one at bar. Third National has not met its heavy burden to show that the parties to the Tax Sharing Agreement did not intend Paragraph 10 as an arbitration agreement. Therefore, the Court finds that this dispute is subject to arbitration pursuant to Paragraph 10 of the Tax Sharing Agreement. Since it is evident that Ernst & Young would not be an impartial arbitrator, the Court will order that the parties submit to the Court the name of a substitute arbitrator for the Court to appoint.

In light of the foregoing analysis, the Court GRANTS the defendant's motion for a stay of the proceedings, subject to the appointment of a neutral arbitrator. The Court hereby ORDERS the parties to submit to the Court within thirty (30) days the name of a mutually-acceptable arbitrator for the Court to appoint.

An Order will be entered in accordance with the reasoning set forth in the contemporaneously entered Memorandum.