IN RE M.W.M., JR., a Minor Child

No. 05-16-00797-CV

Court of Appeals of Texas, Dallas.

Opinion Filed April 5, 2017.

Craig Jackson, Brewer Jackson & Lang, The Old Main Place, 920 S Main, Ste. 100, Grapevine TX 76051, for Helen Cullen.

Adam R. Barela, Sullivan & Cook, LLC, 600 E. Las Colinas Boulevard, Suite 1300, Irving TX 75039, Jeffrey E. Cook, Sullivan & Cook, LLC, 600 E. Las Colinas Boulevard, Suite 1300, Irving TX 75039, for Michael William Mitchell.

Before Justices Francis, Stoddart, and Schenck

## OPINION

Opinion by Justice Schenck

Before the Court is relator's petition for writ of mandamus in which he complains of orders removing the parties' contractually-stipulated arbitrator and ordering arbitration to proceed before a substitute arbitrator appointed by the trial court. After reviewing the parties' briefs and the mandamus record, we have determined that relator has established his right to mandamus relief and conditionally grant the writ.

### Summary of Facts

The underlying proceeding is a Suit Affecting the Parent Child Relationship (SAPCR) relating to the parties' only child, a son. Father is relator. The parents divorced in 2010. Their June 21, 2010 Amended Agreed Final Decree of Divorce includes agreements to mediate, and, if necessary, arbitrate future disputes involving child custody, although the arbitration clause contains language potentially limiting the right to arbitrate, or the choice of arbitrator, in the event of an "emergency."[1]

---

1. The parties' alternate dispute resolution agreement reached to any effort to modify or enforce any aspect of the divorce decree with the parties agreeing first to mediate the issue before seeking any modification from the court or arbitrator, respectively. The agreement identified Coye Conner, Jr. as the mediator. The agreement for binding arbitration was more narrow in focus, but reached to a series of parent-child relationship issues, including disputes regarding the child's education, periods of possession, modification of terms and conditions of conservatorship and possession, modification of child support, and enforcement (other than through contempt proceedings) of child support, periods, terms, and conditions of possession, and terms and conditions of conservatorship. After listing the

Father first requested an emergency hearing with the named arbitrator, Coye Conner, Jr., in July 2012 following Mother's arrest for assault on her new husband. Mother appeared and participated at the hearing without objecting either to the emergency nature of the hearing or to Conner presiding over it. She also did not object to or move to set aside Conner's subsequent award mandating that she refrain from drinking or using drugs for at least twelve hours prior to taking possession of the child, instituting a safety plan for the child, and requiring two home visits during Mother's summer possession.

In March 2013, Father had continued concerns for his son's safety during visits with Mother and requested a telephonic hearing with Conner. That hearing was scheduled for March 26, 2013. Mother did not object to the hearing. Instead, Mother agreed to forgo her scheduled visitation between March 28 and April 8, resulting in the abatement of the March 26 hearing. Conner then requested hearing dates from Mother and Father and asked the parties to each pay a $5,000 deposit to cover fees for the past and upcoming hearings. Father paid the arbitrator's fee; Mother did not. On May 2, 2013, Mother once again decided not to exercise her upcoming period of possession. Mother continued to forgo her scheduled visitation until Friday, October 18, 2013. On that day, without notifying Father, Mother arrived early at school to remove her son and kept him for the weekend. Because only Mother knew she planned to pick the child up and keep him for the weekend, the child was not prepared for a weekend stay and returned to his Father's house on Sunday without shoes and wearing the same clothes he had worn to school on Friday.

On October 23, 2013, Father filed an "Emergency Motion for Relief" with Conner and asked that Mother's rights to possession be suspended until after a hearing could be held to establish necessary safeguards for the child's safety and welfare. Father's counsel served Mother's counsel with the motion and invited Mother to submit her position to Conner. Mother's counsel submitted a letter to the arbitrator that day explaining why Conner should deny Father's motion. Once again, the letter did not object to the continuation of the arbitration proceeding or Conner's presiding over it.

On October 24, 2013, the arbitrator signed a document captioned "Arbitration Order" in which he temporarily suspended Mother's rights to visitation and possession until a hearing could be convened to establish "appropriate safeguards [to be] put in place for the safety and welfare of the child." Visitation would remain suspended "until another award is made and further order of the Court." The "Arbitration Order" also "authorize[d]" the child's school and staff to "<u>not</u> release [the child] to mother or anyone acting on her behalf until a further award is made in this case." The "Arbitration Order" included the court's style of the case as its header.

Conner notified both parties' counsel of the "Arbitration Order," instructed them to coordinate a hearing with his legal assistant, and informed Mother's counsel that she still owed the arbitration fees required to proceed and participate in the arbitration process. It appears that the parties did not have the subsequent hearing as directed by the "Arbitration Order." Instead, on November 25, 2013, Mother filed

topics subject to its reach, the arbitration agreement likewise identified Conner as the arbitrator, though that clause began with an exception for cases of "emergency," a term

the agreement makes no attempt to define. Our disposition of this matter does not require us to resolve the parties' disagreement over its meaning.

a motion in the trial court to remove the arbitrator and supplemented that motion on September 17, 2014.[2] In the interim, Mother and Father reached agreements in December 2013 and again in May 2014 regarding visitation terms and schedules for Mother.

On October 30, 2015, more than two years after Conner signed the "Arbitration Order," the trial court held a hearing on Mother's 2013 motion to remove the arbitrator. In a November 12, 2015 order, the trial court granted Mother's motion, found that Conner had exceeded his authority by signing the "Arbitration Order," declared that order void, found that the order should not have been "disseminated publicly," removed Conner as arbitrator, and appointed Brian Webb as arbitrator. Father appealed the interlocutory order, and this Court dismissed the interlocutory appeal for want of jurisdiction on April 14, 2016. *In Interest of M.W.M.*, No. 05-15-01469-CV, 2016 WL 1469460, at *1 (Tex. App.—Dallas Apr. 14, 2016, no pet.) (mem. op.). In a June 2, 2016 order, the trial court referred all pending issues to arbitration with a substitute arbitrator, Webb.

Father now seeks relief from the November 12, 2015 and June 2, 2016 orders in the instant petition for writ of mandamus.

### Availability of Mandamus Relief

■ To be entitled to a writ of mandamus, relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Pruden-*

*tial Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).

■ Appeal is an inadequate remedy when a trial court improperly designates an arbitrator or otherwise denies a party its contracted-for arbitration rights. *See In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661–62 (Tex. 2011) (orig. proceeding) (conditionally granting writ and directing trial court to vacate order appointing arbitrator where contract did not provide for trial court's appointment of arbitrator); *Austin Commercial Contractors, L.P. v. Carter & Burgess, Inc.*, 347 S.W.3d 897, 901 (Tex. App.—Dallas 2011, pet. denied) (holding no adequate remedy on appeal if trial court denies party contracted-for arbitration rights). If the trial court's order deprives Father of his contracted-for arbitration rights, then Father has no adequate remedy on appeal.

■ A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (per curiam) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). "Arbitration agreements are interpreted under traditional contract principles." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). A trial court has no discretion to modify or contravene specified rules set out in a contract. *In re Nat'l Health Ins. Co.*, 109 S.W.3d 552, 556 (Tex. App.—Tyler 2002, orig. proceeding); *see*

---

**2.** Clearly, the arbitrator and the parties contemplated further proceedings in advance of a final arbitration award. *See Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (discussing and ultimately avoiding potentially complicated question of jurisdiction of proceedings collateral to ongoing arbitration); *compare Collins v. Tex Mall, L.P.*, 297

S.W.3d 409, 416–17 (Tex. App.—Fort Worth 2009, no pet.) (under the common law and the TGAA, arbitration awards must be final to be legally enforceable and subject to judicial review). In their briefs in this proceeding, the parties do not address the ripeness or timeliness of the proceedings before the trial court. In view of our disposition below, we need not decide those issues.

*also In re Lennar Homes of Tex. Sales & Mktg., Ltd.*, No. 02-15-00174-CV, 2015 WL 4366046, at *3 (Tex. App.—Fort Worth July 15, 2015, orig. proceeding) (mem. op.).

## Applicable Law

We first address the law governing this question. The parties' agreement specified that arbitration will be conducted in accordance with both Texas General Arbitration Act (Chapters 154 and 171 of the Texas Civil Practice & Remedies Code) and section 153.0071 of the Texas Family Code (Alternative Dispute Resolution Procedures—Parent-Child Relationship).[3] Standing on its own, the family code's arbitration provisions provide no mechanism for replacing an arbitrator or for reversing an arbitrator's decision on account of the arbitrator exceeding the authority conveyed in the agreement, the sole basis identified by the district court in setting aside the emergency order below. The TGAA, which applies much more broadly to all arbitration agreements except those few that are expressly excluded in section 171.002, does permit a trial court to review for excess authority and to replace the parties' chosen arbitrator under certain circumstances. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(A) (West 2016).

 We do not believe that the Legislature intended the family code's arbitration provisions to stand on their own and in isolation. Rather, absent an irreconcilable conflict, where two or more separate statutory provisions pertain to the same subject, we are obliged to construe the provisions to the greatest extent reasonably possible so as to give effect to both. *DLB Architects v. Weaver*, 305 S.W.3d 407, 409 (Tex. App.—Dallas 2010, pet. denied). Thus, we conclude that the family code's rather skeletal arbitration provisions are augmented by and operate alongside the more general and vastly more detailed general arbitration regime in the TGAA.

## Discussion

 The essence of arbitration is a contractual commitment to have someone—other than a judge—decide a dispute. Having committed to arbitrate or, as here, arbitrate before a particular arbitrator, a party cannot await the decision, final or otherwise, and only then object to the selection of arbitration, the arbitrator, or, as

3. We recognize that the Federal Arbitration Act ("FAA") applies to all arbitration disputes in state or federal court that involve commerce, and that the Supreme Court's jurisprudence concerning the parties' ability to alter its review standards, whether by explicit agreement or by selection of other law, is potentially complicated. *Hall Street Assocs. v. Mattel*, 552 U.S. 576, 590, 128 S.Ct. 1396, 1408, 170 L.Ed.2d 254 (2008) (finding FAA's listed review standards mandatory and unalterable while noting parties' ability to select enforcement under state statutory or common law standards "where judicial review of different scope is arguable"); *compare Edstrom Indus. v. Companion Life*, 516 F.3d 546, 550 (7th Cir. 2008) (holding, prior to *Mattel*, that parties could choose state arbitration law to "opt out of" FAA review standards *"provided"* the selected state statute does not "undermine FAA aims"); *with Ario v. Underwriting Members*, 618 F.3d 277, 288 (3d Cir. 2010) (although parties may choose state-law arbitration standards and opt out of the FAA's default rules, "they cannot 'opt out' of FAA coverage in its entirety because it is the FAA itself that authorizes parties to choose different rules in the first place"). However, the arbitration clause in this case is not within the FAA's broad reach, as the agreement containing it concerns wholly intra-state divorce, custody matters. *See De la Rama v. De la Rama*, 201 U.S. 303, 307, 26 S.Ct. 485, 50 L.Ed. 765 (1906); *see also In re Provine*, 312 S.W.3d 824, 828 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) (TGAA applied to arbitration agreement in divorce decree that regarded disputed marital property within Texas and provided that the agreement was governed by Texas law).

here, both.[4] Instead, once the parties have consented to arbitrate—either by written agreement or by participation in the proceeding—they are bound by their agreement to accept the result except insofar as it is subject to review under the TGAA or other controlling law.[5]

In this case, Mother sought to vacate the "Arbitration Order" and to replace the arbitrator on the ground that the arbitrator had exceeded his authority—a review standard recognized in TGAA section 171.088(a)(3)(A), which addresses when a court may vacate an arbitration award. She did not claim, and the trial court did not grant relief on, any basis identified in the family code's arbitration provision. While the "exceeding authority" standard is an exceedingly narrow mechanism for relief from an arbitration decision, we need not decide whether the trial court acted properly in setting aside the "Arbitration Order" on that basis as the parties agree that the issue it addressed became moot long before the district court's order. Rather, we will focus our attention on the question of whether the trial court had the authority to dismiss the parties' chosen arbitrator and select a new one for them.

Even assuming that some basis existed for determining that Conner had exceeded his authority in connection with the "Arbitration Order," the parties disagree under what circumstances, if any, the trial court is permitted to appoint a different arbitrator or to remove Conner as the arbitrator once an arbitration has commenced. We begin with the observation that the parties are free to select their arbitrator under the TGAA as part of the bargain the courts are obliged to enforce. TEX. CIV. PRAC. & REM. CODE ANN. § 171.041(a) (West 2016). Under the TGAA and the decree, the trial court is authorized to appoint an arbitrator only if a party applies to the court for appointment *and* (1) the agreement does not specify a method of appointment, (2) the agreed method fails or cannot be followed, or (3) an appointed arbitrator fails or is unable to act and a successor has not been appointed by the parties. TEX. CIV. PRAC. & REM. CODE ANN. § 171.041(b) (West 2016).

A trial court abuses its discretion if its orders regarding enforcement of the parties' arbitration agreement contradict the agreement itself. For example, in *Austin Commercial Contractors*, this Court held that the trial court abused its discretion by ordering the parties to proceed to arbitration under American Arbitration Association (AAA) rules where the arbitration agreement required arbitration to proceed under Civilian Board of Contract Appeals rules. *Austin Commercial Contractors, L.P.*, 347 S.W.3d at 902. Similarly, in *In re Lennar Homes*, the parties' agreement required mediation before arbitration and required using the AAA for mediation. *In re Lennar Homes*, 2015 WL 4366046, at *1. The Fort Worth court of appeals held that the trial court abused its discretion by failing to order mediation by

---

4. *See, e.g., Skidmore Energy, Inc. v. Maxus (U.S.) Expl. Co.*, 345 S.W.3d 672, 684 (Tex. App.—Dallas 2011, pet. denied) (citing *Bossley v. Mariner Fin. Grp., Inc.*, 11 S.W.3d 349, 351–52 (Tex. App.—Houston [1st Dist.] 2000), *aff'd*, 79 S.W.3d 30 (Tex. 2002) ("A party may not sit idly by during an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrator when the result turns out to be adverse.")).

5. *Beech St. Corp. v. Baylor Health Care Sys.*, No. 05-12-01671-CV, 2014 WL 3743864, at *2 (Tex. App.—Dallas July 29, 2014, pet. dism'd) (mem. op.) (an arbitration award is presumed valid, and the party seeking to vacate the award has the burden of proving grounds for vacatur exist).

the AAA and, instead, ordering the parties to proceed to mediation with a mediator agreed to by the parties or with the court's chosen mediator. *Id.* at *3; *see also In re Nat'l Health Ins.*, 109 S.W.3d at 556 (trial court abused its discretion by appointing non-AAA arbitrator because AAA rules governed agreement and did not permit appointment by trial courts).

The trial court here removed the parties' chosen arbitrator and appointed a new arbitrator. The arbitration provision, however, allows the trial court to appoint a new arbitrator only if Conner "is unable to serve as arbitrator and the parties cannot agree on a substitute arbitrator." Unambiguous contracts are construed by applying the plain meaning of the contract's terms. The plain meaning of "unable" is not able to do something or being without the capacity or power to act. *See, e.g.,* http://www.merriam-webster.com/dictionary/unable (defining "unable" as not able to do something, incapable, unqualified, incompetent). There is no dispute that Conner is qualified under section 154.052 of the Texas Civil Practice and Remedies Code, and there is no evidence presented that Conner is not capable or competent to act as arbitrator. The trial court's removal of Conner and appointment of a new arbitrator contradicts the agreed terms of the parties' agreement and constitutes an abuse of discretion.

As noted, Mother urges that the trial court had statutory authority to remove Conner and appoint a new arbitrator because Conner exceeded his powers by conducting a hearing on an emergency basis, designating his ruling as an "order" under the trial court style, and permitting the order to be provided to school administrators. Mother relies on sections 171.041,

171.088, and 171.089 of the Texas Civil Practice and Remedies Code to support her argument. That reliance is misplaced, however.

Under section 171.041, the parties' method of appointment of arbitrators set out in the agreement controls the appointment. TEX. CIV. PRAC. & REM. CODE ANN. § 171.041(a) (West 2016). The trial court is authorized to appoint an arbitrator only if a party applies to the court for appointment and (1) the agreement does not specify a method of appointment, (2) the agreed method fails or cannot be followed, or (3) an appointed arbitrator fails or is unable to act and a successor has not been appointed. TEX. CIV. PRAC. & REM. CODE ANN. § 171.041(b) (West 2016). On the facts of this case, section 171.041(b) did not provide the court with authority to remove Conner and appoint a substitute arbitrator on that basis.[6]

Sections 171.088 and 171.089 are similarly inapplicable because of the parties' agreement and specific choice of Conner as arbitrator. Section 171.088 simply sets out when a trial court may vacate an arbitration award and makes no reference to replacement of the arbitrator chosen under the agreement. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088 (West 2016). Section 171.089 provides:

> (a) On vacating an award on grounds other than the grounds stated in Section 171.088(a)(4), the court may order a rehearing before new arbitrators chosen:
>
> > (1) as provided in the agreement to arbitrate; or
> >
> > (2) by the court under Section 171.041, if the agreement does not provide the manner for choosing the arbitrators.

---

**6.** While it is conceivable that an arbitrator's relationship with the parties or his conduct of the arbitration might be so extreme as to

permit the conclusion that the agreed method for selecting the arbitrator has failed, the record here would not support such a claim.

(b) If the award is vacated under Section 171.088(a)(3), the court may order a rehearing before the arbitrators who made the award or their successors appointed under Section 171.041.

TEX. CIV. PRAC. & REM. CODE ANN. § 171.089(a), (b) (West 2016).

Under section 171.089(b), the court could order a rehearing before Conner (i.e., "before the arbitrators who made the award") or before Conner's successor "appointed under Section 171.041." As discussed above, section 171.041 provided no basis for removing Conner and appointing a successor under the facts of this case. As a result, the court's only option for requiring a rehearing of the vacated award was to order Conner to rehear the matter.

Mother relies on three cases to support her argument that the trial court had the authority to remove Conner and appoint Webb as the successor arbitrator: *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064 (2d Cir. 1972), *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 749 F.Supp. 851 (M.D. Tenn. 1990), and *In re Bowery Residents' Comm., Inc. v. Lance Capital, LLC*, 995 N.Y.S.2d 2, 121 A.D.3d 505 (N.Y. App. Div. 2014). None of these cases is instructive or persuasive. In the *Erving* and *WEDGE Group* cases, the arbitrators listed in the parties' agreements were disqualified and the parties' contract did not give them the right to choose the substitute. *See Erving*, 468 F.2d at 1067-68 n.1; *see also WEDGE*, 749 F.Supp. at 853 n.1, 855.

In *Bowery Residents' Committee*, the court affirmed the vacatur of an arbitration award under New York law based on a finding that the arbitrator exceeded his authority under the arbitration agreement. 121 A.D.3d at 505. The court remanded the case to a different arbitrator to determine the remaining issue of expenses. *Id.* But the opinion does not explain why a new

arbitrator was being appointed, or under what authority the court was appointing the new arbitrator. *Id.* at 505–06.

Here, the arbitration agreement appoints Conner as the chosen arbitrator and provides that the trial court shall appoint a substitute arbitrator if Conner is unable to serve as arbitrator **and** the parties cannot agree on a substitute arbitrator. Conner is not unable to serve and, unlike the agreements in *Erving* and *WEDGE*, this agreement contemplates that the parties will choose a substitute arbitrator if Conner is unable to serve. Accordingly, the trial court abused its discretion by removing Conner and appointing Webb.

## Conclusion

Accordingly, we conditionally grant the writ and direct the trial court to issue an order vacating the portion of the November 12, 2015 order removing Conner as arbitrator and appointing Webb as a substitute arbitrator, vacating the June 2, 2016 order referring all pending issues to arbitration with Brian Webb, and reinstating Conner as arbitrator. A writ will issue only in the event the trial court fails to issue the orders as directed herein within fifteen days of the date of this opinion. Because we assume the trial court will comply with this opinion, we direct our clerk not to issue the writ of mandamus unless information is received that the district court has not so complied.