# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00033-CV

**Bobcat North America, LLC, Appellant**

**v.**

**Bart A. Begley; Montgomery M. Davison; Robert A. Smith; and Inland Waste Holdings, LLC, an Oklahoma Limited Liability Company, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-17-002217, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a dispute over appellant Bobcat North America, LLC's purchase of Inland Waste Holdings, LLC. Bobcat agreed to pay $64.9 million subject to certain post-closing adjustments. The parties disagreed over how to calculate one of the adjustments and, following a procedure laid out in the agreement between the parties, termed the Unit Purchase Agreement (UPA), retained an independent accounting firm to determine the correct amount. Bobcat later filed an application in district court to confirm the accounting firm's decision as an arbitration award under the Texas Arbitration Act (TAA). *See generally* Tex. Civ. Prac. & Rem. Code §§ 171.001–.098; *see also id.* § 171.087 ("Confirmation of Award"). The court denied Bobcat's application. Concluding that the district court lacked jurisdiction to grant Bobcat's application, we will affirm.

## BACKGROUND

The UPA calls for an adjustment to the purchase price for Inland's "closing adjusted net working capital," defined as the value of its assets minus its liabilities on the date the sale closed. Section 2.5 of the UPA specifies that the adjustment is equal to the dollar amount by which Inland's capital exceeded or fell short of the "target" amount of $3.32 million.

The UPA directs Bobcat to provide Inland a "Preliminary Closing Statement" with "an updated amount" of closing adjusted net working capital, the amount of the net working-capital adjustment, and the amounts of various other adjustments, setoffs, and deductions. The preliminary statement becomes final thirty days later unless Inland objects. If Inland objects and Bobcat timely responds, the parties agree to meet and negotiate in good faith to resolve the dispute. If negotiations fail, Section 2.5(h)(ii) states that they:

> may elect to have the Closing Statement Dispute resolved by any nationally recognized firm of independent public accountants as to which Buyer and Members' Representative mutually agree (the "CPA Firm"), which shall, acting as an expert and not as an arbitrator, determine on the basis of the standards set forth in Article 2, and only with respect to the remaining Closing Statement Disputes so submitted to the CPA Firm (and not by independent review), whether and to what extent, if any, the Closing Adjusted Net Working Capital requires adjustment and any other proposed adjustments to the Estimated Closing Indebtedness Obligations Pay-Offs, Estimated Retained Indebtedness Obligations, Estimated Members' Acquisition Expenses and Estimated Cash as derived from the Preliminary Closing Statement are required.

This procedure would result in a "Final Closing Statement" reflecting the adjusted amounts.

The UPA also contains a broader dispute-resolution provision in Article 9. Section 9.2 states that the parties agreed to resolve any dispute or disagreement between them "as to the interpretation of any provision of, or the performance of obligations under," the UPA through arbitration under Section 9.3 "except for such disputes or disagreements regarding the Final Closing Statement, which shall be resolved exclusively pursuant to Section 2.5." An arbitration award rendered under Section 9.3 "shall be final, binding and nonappealable."

Inland objected to Bobcat's calculation of its closing adjusted net working capital, and the parties agreed to retain the accounting firm of CohnReznick, LLP to resolve the dispute. The parties also asked CohnReznick to determine the amount of Inland's cash on hand at closing and "the amount due under the Ft. Hood Management Agreement" using the same procedures. CohnReznick subsequently determined that Inland owed Bobcat a total of $2,653,420.86. Inland allegedly refused to pay, and Bobcat filed suit seeking to confirm CohnReznick's determination as an arbitration award.[1] *See id.* § 171.087 ("Confirmation of Award"). Inland responded that the expert-determination process does not constitute an arbitration and, in the alternative, asserted various statutory grounds for vacating the award. *See id.* § 171.088 ("Vacating Award"). Inland later argued that the district court could not grant relief in any event because Section 10.6 of the UPA

---

[1] Bobcat sued Bart A. Begley, Montgomery M. Davison, Robert A. Smith, and Inland Waste Holdings, LLC. We refer to them collectively as "Inland."

3

applies Delaware law to the agreement and requires the parties to bring any litigation in Delaware.[2]

The district court denied Bobcat's application, and this appeal followed.

**GOVERNING LAW**

The UPA provides that the parties' agreement "shall be governed by the laws of the State of Delaware, excluding any choice of law rules that may direct the application of the laws of another jurisdiction." Inland argued to the district court that this provision makes the TAA inapplicable, but never asked the district court to take judicial notice of Delaware law or furnished proof of how Delaware law is materially different from Texas law. *See* Tex. R. Evid. 202(b) (requiring court to take judicial notice of another state's law upon request if it is "supplied with the necessary information"). Moreover, Inland argues in its brief that Delaware and Texas law are the same in all relevant respects. Absent argument to the contrary, we presume here that Texas law is the same as Delaware's. *See El Paso Mktg, L.P. v. Wolf Hollow I, L.P.* 383 S.W.3d 138, 144 n.26 (Tex. 2012).

Arbitration "is a contractual proceeding" where parties to a dispute agree to "select arbitrators or judges of their own choice" and "submit the controversy to such tribunal for determination in substitution for the tribunals provided by the ordinary processes of the law." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (orig. proceeding) (citation omitted);

---

[2] During the pendency of this case, Bobcat sued Inland in Delaware state court and asserted numerous claims arising out of the UPA, including payment disputes. In Texas, Inland raised the forum-selection language in Section 10.6 as a ground for denying Bobcat's application but did not move to dismiss this case. *See Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 261 (Tex. App.—Austin 2010, pet. dism'd) ("A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit.").

4

*see In re M.W.M., Jr.*, 523 S.W.3d 203, 207 (Tex. App.—Dallas 2017, orig. proceeding) ("The essence of arbitration is a contractual commitment to have someone—other than a judge—decide a dispute."). The resulting award "has the effect of a judgment of a court of last resort and is entitled to great deference in a court of law." *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 245 (Tex. 2002).

The TAA states that "[a] written agreement to arbitrate is valid and enforceable" if it provides for arbitration of an existing controversy or one that arises between the parties at a later date. Tex. Civ. Prac. & Rem. Code § 171.001(a). "The making of an agreement described by Section 171.001 that provides for or authorizes arbitration in this state and to which that section applies confers jurisdiction on the court to enforce the agreement and to render judgment on an award under this chapter." *Id.* § 171.081. Once a court acquires jurisdiction, it "shall confirm" an award "[u]nless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091." *Id.* § 171.087. And when a court issues an order that confirms, modifies, or corrects an award, it "shall enter a judgment or decree conforming to the order." *Id.* § 171.092(a).

"Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow." *East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). However, the TAA does not enforce every contractual dispute-resolution procedure as an arbitration. Aside from several categories of agreements that are expressly exempt, *see* Tex. Civ. Prac. & Rem. Code § 171.002(a), it applies only to procedures "by which the parties to a contract reach a binding resolution to their differences." *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 221–22 (Tex. App.—Houston [1st Dist.] 1996, no writ) (combined orig. proceeding and interlocutory appeal); *see Beldon Roofing Co. v. Sunchase IV Homeowners' Ass'n*, 494 S.W.3d 231,

239 (Tex. App.—Corpus Christi 2015, no pet.) ("The TAA, by its express terms, contemplates only binding arbitration.").

**DISCUSSION**

Bobcat argues in three issues that the district court erred by denying its application. First, Bobcat asserts that a forum-selection clause in section 10.6 of the UPA does not apply to a closing-statement dispute. Second, Bobcat argues that the district court possessed jurisdiction because the accountant-determination process constitutes an arbitration. Finally, Bobcat asserts that Inland waived its alternative grounds for vacating the award.

We begin with the question of whether the accountant-determination procedure constitutes an arbitration. The interpretation of a statute or an unambiguous contract presents a question of law that we review de novo. *Soledad v. Texas Farm Bureau Mut. Ins. Co.*, 506 S.W.3d 600, 602 (Tex. App.—Austin 2016, pet. denied). If we conclude that the procedure is not an arbitration, the district court lacked jurisdiction to issue an order under the TAA. *See* Tex. Civ. Prac. & Rem. Code § 171.081; *see also SM Architects, PLLC v. AMX Veteran Specialty Servs., LLC*, 564 S.W.3d 902, 905 (Tex. App.—Dallas 2018, pet. filed) (describing Section 171.081 as a "legislative grant of court jurisdiction over *arbitrations*" (emphasis added)).

Bobcat initially asserts that Section 171.088(a)(4) of the TAA bars Inland's claim. *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(4). That section directs a court to vacate an arbitration award if "there was no agreement to arbitrate," but only if "the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection." *Id.* Bobcat argues that Section 171.088(a)(4) bars Inland's

6

argument because Inland failed to object before retaining CohnReznick. In resolving this issue, we do not focus on the text of Subsection (a)(4) in isolation but construe it "in the context of the statute as a whole." *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018). Section 171.088, read as a whole, presumes that the district court possesses jurisdiction and addresses the circumstances when it may vacate an award. *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(1)–(3) (authorizing court to vacate if award was obtained through corruption, fraud, or misconduct, or the if arbitrators conducted hearing in prejudicial way). Construed against that background, Section 171.088(a)(4) authorizes a court to vacate an award on motion of a party that participated in an arbitration even though it was not contractually bound to arbitrate. *See, e.g.*, *Kreit v. Brewer & Pritchard, P.C.*, 530 S.W.3d 231, 242 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding motion to vacate arbitration award on ground that movant participated in arbitration despite never signing agreement "is properly considered under section 171.088(a)(4)"). But Section 171.088(a)(4) does not apply when a party asserts, as Inland does here, that a court lacked jurisdiction because the parties did not resolve their disputes through a procedure that constitutes an arbitration. *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(4).

We now turn to the merits of that question. Courts "apply ordinary principles of state contract law [to] determine whether there is a valid agreement to arbitrate." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015); *see Halliburton Co. v. KBR, Inc.*, 446 S.W.3d 551, 559 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (examining language of similar expert-determination provision to determine if it was agreement to arbitrate). Our goal when construing a contract "is to ascertain and give effect to the parties' intent as expressed in the

7

instrument." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). We interpret contractual language "according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise." *Id.* (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). "No single provision taken alone is given controlling effect; rather, each must be considered in the context of the instrument as a whole." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).

We begin by noting the statement in Section 2.5(h)(ii) that the accounting firm will act "as an expert and not as an arbitrator" does not address whether the expert-determination procedure is an arbitration. A federal court addressed a similar agreement in *Omni Tech Corp. v. MPC Sols. Sales*, *LLC*, where the parties had agreed that an outside accounting firm, "acting as experts and not as arbitrators," would resolve disputes over purchase-price adjustments. 432 F.3d 797, 798 (7th Cir. 2005). The lower court concluded this language necessarily meant that the agreement was not an arbitration clause. *Id.* at 799. The Seventh Circuit reversed, explaining that the statement actually meant that the firm "will resolve the dispute as accountants do—by examining the corporate books and applying normal accounting principles plus any special definitions the parties have adopted—rather than by entertaining arguments from lawyers and listening to testimony." *Id.*

But the UPA's use of this language also does not mean that the expert's determination is necessarily final and binding. The contract in *Omni Tech*, for example, stated that the accounting firm's determination of the adjustments "shall be final, conclusive, and binding" on the parties, *see id.* at 798, but Section 2.5(h) does not contain similar language. Bobcat argues that CohnReznick's determination is nevertheless final because Sections 9.2 and 2.5 clearly indicate that the parties

8

intended the accounting firm's decision to be final and binding. Specifically, Bobcat points to the statements that "disputes or disagreements regarding the Final Closing Statement" would "be resolved exclusively pursuant to Section 2.5," and that such disputes will be "resolved by" the outside accounting firm. We agree the UPA clearly provides that the accounting firm's decision setting the amount of the adjustments is final, but Section 2.5 does not obligate the parties to pay those amounts. Section 2.6, however, contemplates that the parties will make two adjustment payments (one for the net working capital adjustment and the other for the remaining adjustments) within five business days. And Section 9.2 clearly states that the arbitrators will decide any dispute or disagreement over "the performance of obligations under" the UPA not resolved by the accounting firm under Section 2.5(h)(ii). Construing Sections 9.2, 2.5, and 2.6 together, we conclude that the expert's determination alone is not enforceable as an arbitration award because arbitrators must decide the parties' payment obligations. *Cf. Security Nat'l Ins. Co. v. Waloon Inv., Inc.*, 384 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that court erred in rendering judgment on appraisal award because "[e]ven if no party argues that the appraisal award may be disregarded, the award still must be construed and applied to the insured's claim under the policy"). Because it is undisputed that Bobcat never invoked arbitration under Section 9.2 to order Inland to pay the amounts adjusted by CohnReznick, the district court had no jurisdiction to grant

Bobcat relief.[3] *See* Tex. Civ. Prac. & Rem. Code § 171.081. The district court therefore did not err in denying Bobcat's application. We overrule Bobcat's second issue.[4]

## CONCLUSION

We affirm the district court's order.

_____
Edward Smith, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed: March 20, 2019

---

[3] It is also undisputed that the parties have never submitted a dispute to arbitration under Section 9.3.

[4] We do not address Bobcat's first or third issues because doing so is not necessary to finally dispose of this appeal. *See* Tex. R. App. P. 47.1.